29 P.3d 1242 (2001)
144 Wash.2d 502
In the Matter of the DISCIPLINARY PROCEEDINGS AGAINST Charles O. BONET, Attorney at Law.
No. 19717-2.
Supreme Court of Washington, En Banc.
Decided August 23, 2001.
As Amended August 30, 2001.
As Amended September 21, 2001.
*1243 Jay Ende, Seattle, for Petitioner.
Charles O. Bonet, Pro se.
Robert Wright, Puyallup, for Appellee.
ALEXANDER, C.J.
The Washington State Bar Association (WSBA) is seeking review, pursuant to RLD 7.3(a), of an order of the Disciplinary Board (Board) dismissing three counts of professional misconduct against Charles O. Bonet, a Thurston County deputy prosecuting attorney. Bonet's alleged misconduct arose out of his dealings with Ivan Yoder, a potential witness for Jason McCarty who was a defendant in a criminal case. Count I of the WSBA's complaint contained the allegation that Bonet offered to dismiss a charge against Yoder of conspiracy to deliver methamphetamine if Yoder would invoke his right under the Fifth Amendment to the United States Constitution to not testify as a witness for McCarty, "a constitutional right that Mr. Yoder did not otherwise intend to invoke." Pet. for Review app. A at 1. Count II alleged that Bonet failed to reveal to McCarty's attorney the fact that Bonet and Yoder had agreed that Bonet would dismiss the conspiracy charge against Yoder if Yoder did not testify for McCarty. Count III alleged that Bonet denied to the trial court the existence of the agreement that he had made with *1244 Yoder. For reasons stated herein, we deny review of Counts II and III. We grant review of Count I, affirm the Board's finding that Bonet offered to dismiss charges against Yoder as an inducement to him to not testify and remand to the Board with directions to impose appropriate discipline for that count.

I. FACTS[1] AND PROCEEDINGS
Charles O. Bonet was assigned the responsibility of prosecuting Jason McCarty, a Thurston County lawyer, on multiple charges that included conspiracy to deliver methamphetamine. Prior to McCarty's trial, Ivan Yoder, a named defense witness and potential co-conspirator with McCarty, made conflicting statements about whether or not he was going to testify as a witness for McCarty. Yoder first told Donald Lundahl, a lawyer who had represented him in another case, that he was determined to assert his privilege under the Fifth Amendment to the United States Constitution and would not testify for McCarty. Later, after Yoder was separately charged as a co-conspirator in the delivery of methamphetamine, he again told Lundahl that he was not going to testify for McCarty. However, at about the same time, Yoder told McCarty's attorney, Jerry Buzzard, that he was going to testify on McCarty's behalf.
After McCarty's trial commenced, Yoder asked Thurston County Sheriff's Detective Anthony McCormick to ask Bonet if he would "drop the charge" against Yoder if Yoder did not testify for McCarty. Id. app. C at 6. Bonet replied to Yoder's inquiry by directing McCormick to ask Yoder if he would agree to testify for the State rather than simply not testify. Although Yoder declined this offer, Bonet later spoke to Yoder on the telephone and told him that if he did not testify for McCarty, they could "work something out" and that Bonet would wait to see what Yoder decided to do. Id. app. C at 7. This telephone conversation was overheard, in part, by two Thurston County detectives who were standing near Bonet at the time he spoke to Yoder.
Shortly thereafter, the attorney who had been appointed to represent Yoder on the delivery of methamphetamine charge was told by Bonet that Bonet had agreed to dismiss charges against Yoder if Yoder did not testify for McCarty. Yoder's attorney testified that he asked Bonet to put the terms of the agreement in writing, but that Bonet declined saying "no, because that wouldn't look good." Id. app. C at 9. Yoder later told his attorney that Bonet had made a "deal" with him to dismiss charges against him if he did not testify for McCarty. Id. app. C at 9.
Yoder's attorney subsequently informed McCarty's attorney, Buzzard, that Yoder would not be testifying for McCarty. Buzzard then asked the trial judge to inquire into the circumstances surrounding Yoder's decision to not testify. The trial court agreed to do so and conducted an in camera hearing at which Yoder testified. Yoder indicated at that hearing that "Mr. Bonet assured me that the charges of the conspiracy... against me ... would not be prosecuted, in his own words, that they would go away if I was to take the stand and plead the Fifth Amendment. That was our final deal." Id. app. F at 43. Prior to this hearing, Bonet had indicated to the trial judge in open court that "[w]e have made no offer or inducement to this witness ... in this matter, concerning this trial." Id. app. C at 10.
After the in camera hearing, Bonet formally dismissed the conspiracy charge against Yoder. Yoder then testified for McCarty, who was found guilty of conspiracy to deliver a controlled substance (methamphetamine).[2]
*1245 The WSBA subsequently filed a formal complaint, charging Bonet with the following three counts of attorney misconduct:

Count I
By offering [Ivan] Yoder the benefit of having the charges against him dismissed in exchange for "absenting himself" from the trial through the invocation of a constitutional right that Mr. Yoder did not otherwise intend to invoke, [Mr. Bonet] violated RPC 3.4(b) (which proscribes a lawyer offering an inducement to a witness that is prohibited by law), RPC 8.4(b) (which prohibits the commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer), and RPC 8.4(d) (which prohibits conduct prejudicial to the administration of justice), and subjects [Mr. Bonet] to discipline pursuant to RLD 1.1(I) and RLD 1.1(o).

Count II
By failing to reveal the agreement between the State and Mr. Yoder to Mr. Buzzard, counsel for the defendant, a fact which could negate the guilt of the accused in the eyes of the jury, [Mr. Bonet] violated RPC 3.4(a) (which prohibits a lawyer from unlawfully obstructing another party's access to evidence or unlawfully concealing material having potential evidentiary value) and RPC 3.8 (which requires a criminal prosecutor to make timely disclosure to the defense of all information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense), and subjects [Mr. Bonet] to discipline pursuant to RLD 1.1(I).

Count III
By denying to the court the existence of the agreement, [Mr. Bonet] violated RPC 3.3 (which prohibits a lawyer from knowingly making a false statement of material fact to a tribunal) and RPC 8.4(c) (which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation), and subjects [Mr. Bonet] to discipline pursuant to RLD 1.1(I).
Pet. for Review app. B at 3-4 (emphasis added; footnote omitted).
A hearing officer conducted a hearing on all three counts and found that Bonet's statement to the trial court that he made no offer or inducement to Yoder "was a knowing misrepresentation of material fact." Id. app. C at 11. The hearing officer determined that Count I was not proven, however, presumably based on his finding that "Yoder intended to assert his Fifth Amendment right not to testify at the McCarty conspiracy trial prior to his March 14, 1996 telephone conversation with [Mr. Bonet]." Id. app. C at 14. The hearing officer also concluded that Count II was not proven, based, in part, on his conclusion that Yoder's in camera testimony to the trial judge about the alleged agreement was "completely incredible." Id. app. C at 14. The hearing officer concluded that Count III was proven based on his determination that Bonet made a misrepresentation of material fact to the court when he indicated that he made no offer or inducement to Yoder.
Both parties appealed the hearing officer's decision to the Board. Although the Board adopted the hearing officer's finding[3] that Bonet's statement that he had not made an offer to Yoder was a knowing misrepresentation of material fact, it concurred with the hearing officer's conclusion that Count I had not been proven. In doing so, the Board accepted the hearing officer's finding that Yoder intended to assert his constitutional right to not testify prior to his conversation with Bonet. The Board concluded, as had the hearing officer, that Count II was not proven, because "Count II requires an agreement" and "the Hearing Officer did not make a finding that the State and Mr. Yoder had an agreement." Id. app. A at 3.
The Board did not, however, accept the hearing officer's conclusion that Count III was proven, reasoning that because "Counts II and III appear to refer to the same agreement," and because the hearing officer did not find that an agreement existed in Count II, "Count III cannot have been proven." *1246 Id. app. A at 3. Finally, the Board held that "no sanction is appropriate [, and all charges should] be dismissed." Id. app. A at 4.
The WSBA now seeks discretionary review by this court of the Board's decision to dismiss all three counts of attorney misconduct that were leveled against Bonet.

II. DISCUSSION

A. Authorization of the Petition
As a preliminary matter, Bonet asserts that this court should deny the WSBA's Petition for Review on the basis that the petition contains only the signature of the chief disciplinary counsel and lacks authorization by the WSBA Board of Governors as, he suggests, is required by RLD 7.3(c). This contention is without merit. Although a previous version of RLD 7.3(c) required the WSBA to obtain authorization by the Board of Governors, the rule was amended in 1997 to require authorization of a petition only by the chief disciplinary counsel of the WSBA.[4] In short, authorization of the petition by the chief disciplinary counsel of the WSBA was fully compliant with RLD 7.3(c).

B. Discretionary Review

1. Significant Question of Law
The WSBA asserts that we should grant discretionary review of the Board's dismissal of Counts II and III on the basis that "a significant question of law is involved." RLD 7.3(a)(2). It argues here that the Board's failure, sua sponte, to deem Counts II and III amended to conform to the evidence that there was an "offer," rather than an "agreement," involves a significant question of law.
RLD 4.1(a)[5] incorporates CR 15(b), which provides that "amendment of the pleadings as may be necessary to cause them to conform to the evidence ... may be made upon motion of any party at any time, even after judgment." (Emphasis added). The granting of a motion to amend a pleading is a discretionary act. Herron v. Tribune Publ'g Co., 108 Wash.2d 162, 165-69, 736 P.2d 249 (1987). The denial of such a motion will not be disturbed unless the reviewing court concludes that the denial was a manifest abuse of discretion. Del Guzzi Constr. Co. v. Global N.W. Ltd., 105 Wash.2d 878, 719 P.2d 120 (1986). An abuse of discretion occurs only when no reasonable person would take the view adopted. State v. Castellanos, 132 Wash.2d 94, 97, 935 P.2d 1353 (1997).
It is significant that the WSBA never sought an amendment of the pleadings before the Board.[6] That being the case, the Board was clearly not under any legal duty to consider the complaint amended to conform to the evidence. We reach that conclusion because if a trial court, or an administrative tribunal operating under the rules of court, has discretion to determine if a motion to amend a pleading should be granted, it should have even greater discretion in determining if it should amend a pleading sua sponte.
We can easily say that the Board did not act unreasonably in failing to deem the pleadings amended. In setting forth its reasons for declining to do so, the Board indicated that "considerations of procedural due process dictate that the Disciplinary Board, sua sponte, cannot amend the charges in the Formal Complaint to conform to the evidence." Pet. for Review app. A at 3. We are satisfied that this decision was reasonable *1247 and that the Board did not abuse its considerable discretion. Indeed, the fact that the WSBA itself did not seek an amendment of the pleadings before the Board supports our conclusion that the Board acted reasonably in not amending the pleadings sua sponte. In short, the Board can hardly be faulted for declining to do something that it was never asked to do. We conclude, therefore, that the WSBA has not presented a significant question of law justifying review of Counts II and III under RLD 7.3(a)(2).

2. No Substantial Evidence in the Record
The WSBA also asserts that we should grant discretionary review of the Board's dismissal of Counts II and III on the basis that "there is no substantial evidence in the record to support a material finding of fact upon which the decision of the Board is based. RLD 7.3(a)(3)." Pet. for Review at 14. Substantial evidence exists if the record contains "`evidence in sufficient quantum to persuade a fair-minded, rational person of the truth of a declared premise.'" In re Welfare of Snyder, 85 Wash.2d 182, 185-86, 532 P.2d 278 (1975) (quoting Helman v. Sacred Heart Hosp., 62 Wash.2d 136, 147, 381 P.2d 605 (1963)).
The WSBA does not cite an express finding of fact that it alleges is not supported by substantial evidence. Rather, it notes that Count III, which the hearing officer concluded had been proven, "posits the `existence of the agreement.'" Pet. for Review at 14. The WSBA also alleges that a majority of the Board
(1) ignored findings of fact that established the existence of an illegal and unethical "offer" and an "agreement", as charged, and (2) modified a "Comment" by the Hearing Officer about the irrelevance of a factual issue to the case in such a way as to transform it into a finding of fact against the Bar Association on a dispositive issue, without giving the Hearing Officer an opportunity to clarify the matter.
Id. at 12-13. In essence, the WSBA asserts that because "the record is replete with evidence... to support such a finding [of an agreement]," the Board could not have concluded that there was no substantial evidence to support a finding of the existence of an agreement. Id. at 13. Therefore, according to the WSBA, Counts II and III should not have been dismissed.
Although the WSBA correctly notes that Count III posits an agreement, it does not necessarily follow by implication that the hearing officer found the existence of an agreement. It is possible that the hearing officer found that Count III was proven, without concluding that there was an agreement. Indeed, in dismissing Count III, the Board expressly indicated its concern with respect to the lack of a finding of an agreement by the hearing officer.
We recognize, furthermore, that rational minds could differ as to whether the record contains a "sufficient quantum" of evidence to establish the existence of an agreement. We simply cannot conclude that the evidence was of sufficient weight to mandate a determination by the Board that an agreement existed. In the final analysis, resolution of the question of whether or not an agreement existed turned on an evaluation of the testimony of various witnesses. The credibility afforded to each witness is, of course, a determination that properly resides in the hearing officer. See In re Discipline of Dann, 136 Wash.2d 67, 77, 960 P.2d 416 (1998) (holding that the Board generally may not substitute its own evaluation of the credibility of witnesses over that of the hearing officer). In addition, even if this court were of the opinion that the hearing officer should have resolved the factual finding otherwise, it would be inappropriate for it to substitute its judgment for that of the hearing officer or the Board. See Thorndike v. Hesperian Orchards, Inc., 54 Wash.2d 570, 575, 343 P.2d 183 (1959) (holding that findings of fact amply supported by the evidence will not be disturbed on appeal).
We conclude that the Board did not err in determining that "there is no substantial evidence in the record to support a material finding of fact upon which the decision of the Board is based. RLD 7.3(a)(3)." Pet. for Review at 13. We thus hold that review of Counts II and III is not warranted under RLD 7.3(a)(3).

*1248 3. Issue of Substantial Public Interest
The WSBA also asserts that we should grant review of Count I. It contends that, contrary to the Board's conclusion, Yoder's prior subjective intent to not testify at McCarty's trial is irrelevant to the issue of whether Bonet committed an act of misconduct by offering to dismiss criminal charges against Yoder in exchange for Yoder's agreement to not testify for McCarty. For reasons set forth hereafter, we agree with the WSBA. Accordingly, we grant review of Count I on the basis that the "petition involves an issue of substantial public interest that should be determined by the Supreme Court." RLD 7.3(a)(4).
The issue of substantial public interest that is presented here is this: may a prosecuting attorney offer an inducement to a defense witness to not testify at a criminal proceeding? More specifically, is it misconduct for a deputy prosecuting attorney to attempt to induce a witness to not testify for a person charged with a crime, even if the offer has no affect on the witness's decision to not testify? This issue is directly presented by the hearing officer's finding, which was adopted by the Board without modification, that Bonet's statement that "[w]e have made no offer or inducement to [Yoder] ... in this matter, concerning this trial" was a "knowing misrepresentation of material fact." Pet. for Review app. C at 10, 11. While the hearing officer did not make a finding that Bonet made an offer or inducement to Yoder to not testify, that fact may be inferred from the Board's adoption of the finding that Bonet engaged in a knowing misrepresentation when he said he had not made an offer or inducement to Yoder to not testify.

III. REVIEW OF COUNT I
Having granted review of Count I, on the basis that it presents an issue of substantial public interest, we must next determine if we should remand to the Board to resolve the question set forth above, or whether we should resolve the issue ourselves, without oral argument. Under RAP 11.6 an "appellate court may, on its own initiative ..., decide a case without oral argument." Because RLD 7.4 states that "[t]he Rules of Appellate Procedure shall serve as guidance for review conducted pursuant to this rule, except ... as to matters specifically dealt with herein," we are satisfied that we may review the Board's dismissal of Count I without benefit of oral argument. Based on the record before us we are inclined to do so because, in our judgment, a remand would serve no useful purpose. We reach that determination because the Board adopted the hearing officer's factual determination that Bonet made an illegal offer or inducement to Yoder to not testify. That being the case, the question of whether this constitutes misconduct is purely a question of law.
We have no difficulty reaching a conclusion that a public or private attorney may not offer an inducement to a witness in order to influence that person to not testify at a trial. An attorney who does that, in our view, violates RPC 3.4(b),[7] RPC 8.4(b), and RPC 8.4(d),[8] regardless of whether the offer or inducement influenced the witness's decision to testify or not testify. Consistent with that notion, we hold that the conclusions of the hearing officer and Board to the effect that Yoder had a preexisting intent to not testify for McCarty is simply irrelevant in determining if Bonet's offer constituted unethical conduct. The gravamen of the complaint alleging misconduct on the part of Bonet is that he offered an inducement to Yoder to influence him to not testify for McCarty. If that is shown, as it was, that act, without more, constitutes a violation of *1249 the rules set forth in Count I. The fact that the offer did not, in fact, influence Yoder's testimony is irrelevant. In our view, it would contradict the interest of the public to absolve Bonet of an act of professional misconduct merely because Yoder had a prior subjective intent to not testify. In reaching this conclusion, we take particular note of the fact that in this state a prosecuting attorney possesses a significant powerthe power to charge or not charge a person with a crime. A prosecutor's act of offering to dismiss or withhold a charge against a person in order to influence that person's decision about testifying for another person charged with a crime is highly unethical and as deserving of opprobrium as would a public or private attorney's effort to bribe a witness with money to influence that person's testimony.[9]
In sum, we are satisfied, after reviewing the record, that the Board's factual determination that Bonet offered to dismiss criminal charges against Yoder as an inducement to Yoder to not testify should be affirmed. We conclude, additionally, that it was error for the hearing officer and the Board to hold that because Bonet's offer was not linked to Yoder's decision to not testify Count I was not proven. As we observed above, Yoder's intent to testify is entirely irrelevant to whether Bonet's offer constitutes attorney misconduct and the finding of the hearing officer and Board in that regard is surplusage. Because Count I is proven, we reverse the Board's decision that "no sanction is appropriate [and all charges should] be dismissed." Pet. for Review app. A at 4. We, therefore, remand to the Board with directions to it to impose or recommend appropriate discipline for the misconduct alleged in Count I.

IV. CONCLUSION
We deny review of Counts II and III pursuant to RLD 7.3(a)(2) because the Board's decision to not modify the complaint to comply with the evidence was within its discretion, and, therefore, does not involve a significant question of law. We also deny review of these counts pursuant to RLD 7.3(a)(3) because there was substantial evidence in the record to support the Board's finding that no agreement was found. We grant review of Count I because the petition involves a substantial issue of public importance that should be determined by the Supreme Court. On review we affirm the Board's finding that Bonet did offer to dismiss charges against Yoder as an inducement to Yoder to not testify and conclude that Count I was proven, and that this conduct constituted a violation of RPC 3.4(b), RPC 8.4(b), and RPC 8.4(d). We remand to the Board with directions to impose or recommend appropriate discipline for this misconduct.
SMITH, IRELAND, JOHNSON, BRIDGE, MADSEN, CHAMBERS, SANDERS AND OWENS, JJ., concur.
NOTES
[1] Unless otherwise noted herein, the facts presented are not at issue and are contained in the hearing officer's findings of fact. Findings of fact that are not at issue can be treated as verities on appeal. See, e.g., In re Discipline of Johnson, 118 Wash.2d 693, 701, 826 P.2d 186 (1992).
[2] The State had charged McCarty with two counts of money laundering and one count of conspiracy to deliver methamphetamine, a controlled substance. The money laundering charges were separated from the conspiracy charge. McCarty was convicted of the money laundering charges at a trial that preceded the trial at which Yoder testified. The Court of Appeals upheld McCarty's conviction for delivery of methamphetamine concluding that Bonet's conduct had not affected McCarty's defense.
[3] The Board adopted the hearing officer's findings of fact and conclusions of law "with the modifications stated in this order." Pet. for Review app. A at 1.
[4] RLD 7.3(c) provides that "[t]he Chief Disciplinary Counsel may authorize disciplinary counsel to seek discretionary review by the Supreme Court of a decision of the Disciplinary Board by filing a petition for review with the Supreme Court within 25 days of service of the decision of the Board upon the respondent lawyer."
[5] RLD 4.1(a) provides, in part, that "[p]roceedings pursuant to these rules shall be conducted in general conformance with the civil rules.... Those rules shall apply directly when indicated, and in all other cases shall serve as guidance."
[6] The issue of amending the complaint to conform to the evidence was not raised by the WSBA until its petition for review when it reflected on the language in the Board's order which said "considerations of procedural due process dictate that the Disciplinary Board, sua sponte, cannot amend the charges in the Formal Complaint to conform to the evidence." Pet. for Review app. A at 3.
[7] A lawyer shall not "[f]alsify evidence, counsel or assist a witness to falsely testify, or offer an inducement to a witness that is prohibited by law." RPC 3.4(b).
[8] "It is professional misconduct for a lawyer to:

"....
"(b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
"....
"(d) Engage in conduct that is prejudicial to the administration of justice." RPC 8.4.
[9] We recognize that an attorney for a person who is either charged with a crime or is a potential witness in a criminal proceeding may discuss with his or her client the right that the client has under the United States Constitution amendment V and state constitution, article I, section 9 to not be compelled to be a witness against himself or herself. Clearly Bonet was not Yoder's attorney.