155 P.3d 937 (2007)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Timothy W. CARPENTER, Attorney at Law.
No. 200,376-1.
Supreme Court of Washington, En Banc.
Argued January 25, 2007.
Decided April 12, 2007.
*938 Kurt M. Bulmer, Seattle, WA, for Petitioner.
Nancy Ann Bickford Miller, Washington State Bar Association, Seattle, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 This attorney discipline case arose out of Timothy W. Carpenter's representation of two codefendants in a lawsuit to collect on a property transaction. He was charged with failing to withdraw when it became apparent that the codefendants had a conflict of interest. He was also charged with representing one of the former codefendants against the other in a later indemnification suit without obtaining consent or a waiver.
¶ 2 The hearing officer recommended no sanction except for the payment of costs. The Washington State Bar Association Disciplinary Board (Board) instead imposed a two month suspension for the conflicts of interest and representation of one former client in the later action against another. We affirm the Board's ruling and approve the two month suspension.

*939 FACTS[1]
¶ 3 In the fall of 1996, Holden/Five Star, Inc. bought a gas station from Tark Associates (Tark). Holden used SSI Properties, Inc. (SPI) to facilitate the real estate exchange for tax purposes, with all parties signing a real property exchange agreement. After E. Ray Holden acquired the property, he stopped making payments on the note to Tark. Tark sued both Holden and SPI. Mr. Carpenter represented both Holden and SPI in the action (Tark litigation).
¶ 4 SPI was concerned that Carpenter represented both clients, and that SPI had a potential cross claim against Holden that might not be pursued. SPI asked for additional assurances of indemnity in the Tark case, and Holden signed an additional indemnity statement on April 16, 1999. Carpenter sent Holden a letter on May 27, 1999, which noted that Holden was overdue on his legal bill, Holden's phone had been disconnected, and he had not replied to any correspondence, likely raising questions about the value of Holden's indemnity.
¶ 5 SPI asked to be dismissed from the Tark litigation as a real party and that this claim be included in the answer. Greg Thulin, an associate in Carpenter's firm, added the appropriate language to the answer. However, Carpenter decided it was unlikely that SPI would be dismissed as a real party. Consequently, Carpenter did not argue that SPI should be dismissed in the subsequent response to summary judgment.
¶ 6 On August 13, 1999, judgment was entered against Holden/Five Star and against SPI, jointly and severally, for $343,516.11. SPI wanted Holden to post a bond to protect SPI's assets from the Tark judgment. Holden told Carpenter's associate (Thulin) that he was leaning toward appealing the judgment without posting a bond. Meanwhile, Carpenter attempted to settle with Tark by offering to return the gas station, along with a cash payment of $20,000. This offer was rejected. Holden did not have any other assets that could be reached by the judgment.
¶ 7 Tark attempted to attach SPI assets in California to satisfy the judgment. On September 27, 1999, SPI filed a separate suit against Holden to enforce the indemnity provisions (SPI litigation). On October 5, 1999, Carpenter withdrew from the representation of SPI in the Tark litigation. He then accepted service and entered a notice of appearance for Holden in the SPI litigation. Carpenter never obtained written consent from SPI to represent Holden in the SPI litigation.
¶ 8 Carpenter noted in a letter that he felt it was in the parties' mutual interests to cooperate in the Tark appeal and offered to share his appeal brief draft. Additionally, Carpenter argued that SPI had waived any objection to his representation by expressly serving him with the later SPI lawsuit. SPI did not formally complain about Carpenter's involvement in the SPI indemnification litigation until December 22, 1999. Such complaint was made two days after SPI lost a motion for relief from judgment in the Tark litigation.
¶ 9 The December 22, 1999, letter from SPI counsel notes "concern" with Carpenter's past representation of SPI but does not ask him to withdraw. In his written response, Carpenter asserts he had proceeded under the assumption that SPI wanted him involved in the litigation. In this letter, Carpenter asked whether SPI wished him to withdraw. SPI never replied to this request in Carpenter's letter and never directly demanded withdrawal.
¶ 10 SPI posted its own bond for $460,000 in the Tark litigation. On January 14, 2000, SPI obtained a summary judgment against Holden in the SPI litigation for $343,693.11. This award was then applied to pay off SPI's obligation in the Tark litigation.

PROCEDURAL HISTORY
¶ 11 On January 27, 2004, the Washington State Bar Association (Association) filed a formal complaint against Carpenter, charging *940 four counts of misconduct. Both the Board and the hearing officer agreed to dismiss counts 1 and 2. Currently, only counts 3 and 4 are disputed before this court:
Count 3: By representing Holden/Five Star in the SPI litigation, Respondent violated RPC 1.7 and/or 1.9, Conflict of Interest; Former Client.

Count 4: By continuing to represent Holden/Five Star when doing so would result in a violation of RPC 1.7, Conflict of Interest, Respondent violated RPC 1.15(a)(1), Declining or Terminating Representation.

Clerk's Papers (CP) at 5.
¶ 12 The hearing officer found a single negligent violation of former RPC 1.9 (2004) in count 3, and based upon mitigators and lack of actual injury to the client, reduced the sanction to costs and expenses. The hearing officer found no aggravators, found three mitigators, and found only a technical violation of former RPC 1.9. The hearing officer concluded the appropriate sanction was paying expenses and costs.
¶ 13 On appeal by the Association, the Board affirmed the hearing officer's findings that Carpenter violated former RPC 1.9 in count 3 but amended the finding of mental state from negligence to knowledge. The Board also found a knowing violation of former RPC 1.7 (2004) in count 4. The Board then found two additional aggravators, struck one mitigator, and noted the lack of actual injury to the client. Ultimately the Board mitigated the presumptive six month suspension for a knowing violation to a lesser, two month suspension.

STANDARD OF REVIEW
¶ 14 The Washington Supreme Court has final authority over lawyer discipline matters. In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 208, 125 P.3d 954 (2006). We review conclusions of law de novo and will not disturb challenged findings of fact if they are supported by substantial evidence. Id. The Association must prove misconduct by a clear preponderance of the evidence. Id. We give greater consideration to the Board's recommended sanction than to that of the hearing officer because "the Board is the only body that hears the full range of disciplinary matters." In re Disciplinary Proceeding Against Christopher, 153 Wash.2d 669, 677, 105 P.3d 976 (2005).

ANALYSIS
¶ 15 In this case we are presented with three issues: (1) Did Carpenter knowingly violate former RPC 1.7 or former RPC 1.9 under count 3? (2) Did Carpenter knowingly violate former RPC 1.15(a) (2004) and former RPC 1.7 under count 4? (3) Is the Board's sanction appropriate after balancing the mitigating and aggravating factors? Today, we affirm the Board's decision that Carpenter knowingly violated former RPC 1.9 under count 3, and knowingly violated former RPC 1.15(a) and former RPC 1.7 under count 4.[2]
Count 3Violation of Former RPC 1.9 in the SPI Litigation
¶ 16 Carpenter alleges he was denied due process because the Association did not mention count 3 in its notice of appeal or in its briefing to the Board. See Br. of Resp't at 18-19. The Association argues that Carpenter was well aware of its intention to challenge the hearing officer's findings regarding count 3. A quick review of the Association's briefing shows that Carpenter was on notice that count 3 would be reviewed as part of the Board hearing. See CP at 37-40; see also Decision Papers (DP) at 16 n. 1 (Disciplinary Board Order Amending Hr'g Officer's Decision) ("the Board finds that the statement in the Association's brief [regarding former RPC 1.9 and count 3] put Carpenter on notice that the mental state and sanction in *941 Count 3 were at issue"). Allowing the Board to review the complaint without a limitation on issues is consistent with ELC 11.12(b).[3]
¶ 17 In count 3, both the hearing officer and the Board found that Carpenter breached former RPC 1.9 when he represented Holden against former client SPI with materially adverse interests.[4] Unchallenged findings are verities on appeal. See In re Disciplinary Proceeding Against Whitney, 155 Wash.2d 451, 461, 120 P.3d 550 (2005). The fundamental issue in this case is whether Carpenter knew about the conflict of interest or if his failure to obtain a waiver for the conflict was merely negligent.[5] We affirm the Board's decision which found that Carpenter's violation of former RPC 1.9 was clearly a knowing violation. DP at 16-17.
¶ 18 Carpenter argues he was merely negligent because there was not "substantial risk" of consequences from his actions and he did not deviate from the standard of care employed by a reasonable attorney. See ABA Standards For Imposing Lawyer Sanctions Definitions at 17 (1991). However, Carpenter's actions clearly were taken with knowledge. He had "conscious awareness" of the nature or attendant circumstances of his conflicts. Id. Carpenter knew he was representing Holden/Five Star against a former client (SPI) in a substantially related matter involving some of the same facts and circumstances. He knew he did not procure the required signed consent. See CP at 67 (Findings of Fact 47, 48, 49). Indeed, Carpenter admits he never obtained an informed written consent from SPI. See Opening Br. of Carpenter at 10. Carpenter also admits that "the subject matter of the SPI litigation was substantially related to the Tark litigation and the interests of Holden/Five Star were materially adverse to SPI's." Id. at 9.
¶ 19 This case is similar to In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 126 P.3d 1262 (2006). In that case, the attorney argued he was only negligent when he knew of a conflict but failed to obtain written consent. Id. at 340 n. 11, 126 P.3d 1262. This court rejected the argument, noting that "[t]here is no intent element related to obtaining informed written consent, which either exists or does not." Id. Here, Carpenter never obtained informed written consent from SPI.[6] Curiously, he attempts to place the burden on SPI by arguing that it could have demanded his withdrawal, and its failure to do so waived the conflict of interest. See Opening Br. of Carpenter at 24-25. However, Haley clearly states that waiver "either exists or does not" and in this case, there was no informed written consent. 156 Wash.2d at 340 n. 11, 126 P.3d 1262. The burden is on the attorney. The Association correctly asserts that it is not "incumbent upon the client to police the lawyer's ethics and conduct, particularly where, as here, the client never received the required disclosures." See Answering Br. of Washington State Bar Association (WSBA) at 21.
*942 ¶ 20 In sum, Carpenter should have obtained a fully informed written waiver from his former client. We have previously stated that "[e]ven assuming that some clients tacitly approved of his misconduct, `[t]he disciplinary rules govern the conduct of lawyers; misconduct is not something other than misconduct when it is approved by others.' The injury is as much to the image of the legal profession as it is to the individual client." In re Disciplinary Proceedings Against Dann, 136 Wash.2d 67, 79 n. 2, 960 P.2d 416 (1998) (second alteration in original) (internal citation omitted) (quoting In re Complaint of Dinerman, 314 Or. 308, 840 P.2d 50, 55 (1992)).
Count 4Violations of Former RPC 1.15(a)[7] and Former RPC 1.7[8]in the Tark Litigation
¶ 21 The Board held that the hearing officer erred when the officer dismissed Carpenter's violations in count 4. Instead, the Board concluded that:
The Respondent knowingly violated RPC 1.15(a)(1) by his continuing representation of Holden/Five Star in violation of RPC 1.7 after he became aware of facts and circumstances regarding Holden's willingness or ability to pay. Therefore, Respondent knowingly violated RPC 1.15(a) and/or 1.7.
DP at 16-17. The Association charges that Carpenter did not adequately defend SPI's interests when he failed to include a dismissal/motion for SPI in the response to the summary judgment motion. The Association also argues that Carpenter knew Holden might not have the financial resources to indemnify SPI. Answering Br. of WSBA at 23-24. Further, the Association argues that Carpenter had an interest in assuring that SPI was jointly liable for the judgment because Tark could look to SPI to satisfy the judgment instead of to his other client, Holden. Id. The record supports the Association's position here.
¶ 22 The rule is clear, "If a lawyer accepts dual representation and the client's interests thereafter come into actual conflict, the lawyer must withdraw." Gustafson v. City of Seattle, 87 Wash.App. 298, 303, 941 P.2d 701 (1997) (citing Eriks v. Denver, 118 Wash.2d 451, 459, 824 P.2d 1207 (1992)). Here, Carpenter did not propose certain defenses for SPI, such as dismissal, because he considered the defenses improbable. Meanwhile, he advanced all defenses attractive to his other client, Holden. See Opening Br. of Carpenter at 6-7. Thulin, Carpenter's associate, did include in the answer a request that SPI be dismissed because SPI was acting only as an intermediary. Id. at 6. However, the documents filed for the summary judgment hearing did not present any SPI defense but focused on other Holden defenses. See Ex. 48.
¶ 23 Moreover, Carpenter knew that Holden did not plan to post a bond for the appeal of the judgment against both clients. Ex. 53. He knew that Holden's assets were in Fiji and that Holden might be judgment proof. Discipline Hr'g Tr. (February 7, 2005) at 179-80. In light of these facts, Carpenter had to know that SPI was substantially more at risk to collection actions than Holden. This presents a clear conflict of interest between the two clients. In a clear violation of the RPC, Carpenter never *943 obtained SPI's informed written consent to the ongoing, conflicting joint representation.
¶ 24 Finally, Carpenter argues that the charges of count 4 are inconsistent. Carpenter argues that count 4 does not charge a violation of former RPC 1.7 on its face, but instead is dependent on finding a violation in a previous count. This is incorrect. The Board has the right to amend the pleadings to conform to the evidence, and Carpenter was on notice that he would have to defend against multiple violations before the Board. See In re Disciplinary Proceedings Against Bonet, 144 Wash.2d 502, 509-10, 29 P.3d 1242 (2001). In count 4, the charged former RPC 1.15(a) violation is the failure to withdraw if the representation will result in violation of another RPC (here the Board determined the additional violation was former RPC 1.7). In conclusion, contrary to Carpenter's assertion, the Board can amend a charging count to conform to the evidence. See ELC 10.1(a) (incorporating CR 15(b) which allows "amendment of the pleadings as may be necessary to cause them to conform to the evidence").[9]
Aggravating and Mitigating Factors
¶ 25 The hearing officer found no aggravating factors and three mitigating factors. The mitigators were no prior disciplinary record, no dishonest or selfish motive, and a good reputation in the legal community. Consistent with these findings, the hearing officer recommended no sanction[10] for the "technical" violation of former RPC 1.9 and ordered Carpenter to only pay costs and expenses. CP at 70.
¶ 26 The Association appealed the decision to the Board. Upon review, the Board found only two mitigating factors: no prior disciplinary record and a good reputation in the legal community. The Board found two additional aggravating factors: Carpenter's substantial legal experience and multiple offenses.
¶ 27 First, the Board deleted the second mitigating factor, absence of a dishonest or selfish motive, holding that this factor was not supported by the record. Answering Br. of WSBA at 34.
¶ 28 The Association argues that while there is no direct evidence of a selfish or dishonest motive, there is no proof of Carpenter's lack of a selfish motive. Id. The ABA Standards clearly states that the absence of a dishonest or selfish motive is a mitigator and the presence of said motive is an aggravator. This places the burden of proof on the respondent to prove the mitigating factor, much as the burden would be on the Association to prove the presence of a selfish motive as an aggravating factor. ELC 11.12(b) provides that findings of fact are reviewed using a "substantial evidence" test. Here, Carpenter does not offer any evidence which would disturb the Board's contention that there is no "substantial evidence" to prove the absence or presence of a selfish motive. Further, the hearing officer does not cite to any facts in the record which would support this mitigator.
¶ 29 Next, the Board correctly found that Carpenter engaged in multiple violations of the RPC, which is an aggravating factor. Carpenter is charged with a conflict of interest in two separate lawsuits involving the same client. He is charged with multiple violations because he was found guilty of both counts 3 and 4. Moreover, Carpenter has substantial legal experience, which is also an aggravating factor. He *944 notes in a letter to the Association that he served as a former president of the Whatcom County Bar Association. Ex. 107. Carpenter should have known better than to litigate against a former client without obtaining a proper written waiver. The Board correctly determined aggravating factors of multiple violations and substantial legal experience.
¶ 30 The issue of harm to the client is an important factor when determining an attorney sanction. Neither the hearing officer nor the Board found that SPI had ultimately been injured (the judgment was satisfied). However, an injury may either be actual or potential. This court has noted that "a disciplinary proceeding does not require a showing of actual harm. . . . `The rationale is the need for protection of the public and the integrity of the profession.'" In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 486, 998 P.2d 833 (2000) (quoting Hizey v. Carpenter, 119 Wash.2d 251, 262, 830 P.2d 646 (1992)). Here, Carpenter's conflicts and failure to obtain a written waiver were properly raised because of the serious possibility of financial harm to SPI if Holden/Five Star refused indemnification or was unable to provide it.
¶ 31 Further, Carpenter's negligent representation of Holden/Five Star against a former client in the substantially related subsequent case potentially damages the reputation of the legal profession. Id. Members of the community rightfully expect that when they hire an attorney, the lawyer will not immediately turn around and accept representation against them in an adverse matter. For example, Carpenter could have used confidential information obtained in his representation of SPI in the Tark litigation against SPI in the subsequent litigation. While there is no evidence that such a violation of trust occurred, the possibility of an impropriety is sufficient to show a potential injury.
¶ 32 In sum, the hearing officer's determination that there was little or no actual or potential injury to a client was not correct. While there was no actual harm, there was a substantial possibility of injury to SPI.

RECOMMENDED SANCTION
¶ 33 We conclude that the Board's two month suspension for knowing violations of counts 3 and 4 are supported by substantial evidence. The Board should deviate from the presumptive sanction only if the aggravating or mitigating factors are sufficiently compelling to justify a departure. In re Disciplinary Proceeding Against Anschell, 141 Wash.2d 593, 615, 9 P.3d 193 (2000). This court will usually adopt the Board's recommended sanction unless the sanction is not proportionate or the Board was not unanimous in its decision. In re Disciplinary Proceeding Against Miller, 149 Wash.2d 262, 277-78, 66 P.3d 1069 (2003). Here, the Board correctly amended the hearing officer's findings by a vote of 10 to 1. The Board then applied ABA Standard 4.32, which states:
Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.
The presumptive sanction for knowing violations in counts 3 and 4 is suspension. The Board, after weighing the aggravating and mitigating factors, reduced the presumptive six month suspension to a lesser suspension of two months. Because of the Board's experience in disciplinary matters, we give its conclusions heavy consideration. Here, we affirm the Board's proposed sanction of a two month suspension from the practice of law.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, CHARLES W. JOHNSON, BARBARA A. MADSEN, BOBBE J. BRIDGE, SUSAN OWENS, MARY E. FAIRHURST (result only), JJ., STEPHEN M. BROWN, MARYWAVE VAN DEREN, JJ. Pro Tem.
NOTES
[1] Statement of facts are derived from the hearing officer's findings of fact, conclusions of law and recommendation, which were accepted by the Board. Clerk's Papers (CP) at 60-70; Decision Papers (DP) at 1-11.
[2] When determining appropriate attorney disciplinary sanctions, the court engages in a two-step process utilizing the American Bar Association's Standards for Imposing Lawyer Sanctions (1991). See In re Disciplinary Proceeding Against Cohen, 149 Wash.2d 323, 338, 67 P.3d 1086 (2003). First, the presumptive sanction is determined by considering the ethical duty violated, the lawyer's mental state, and the extent of the actual or potential harm caused by the misconduct. Id. Second, the court considers any aggravating or mitigating factors that may alter the presumptive sanction or affect the nature or length of the discipline to be imposed. Id.
[3] ELC 11.12(b): "Standards of Review. The Board reviews findings of fact for substantial evidence. The Board reviews conclusions of law and recommendation de novo. Evidence not presented to the hearing officer or panel cannot be considered by the Board."
[4] Former Rule 1.9:

CONFLICT OF INTEREST; FORMER CLIENT
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or
(b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit.
[5] "Intent" is the conscious objective or purpose to accomplish a particular result.

"Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.
"Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.
ABA Standards Definitions at 17.
[6] See ABA, Annotated Model Rules of Professional Conduct 111 cmt. 20 to rule 1.7 (5th ed. 2003) ("[T]he writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing.").
[7] Former RPC 1.15:

DECLINING OR TERMINATING REPRESENTATION
(a) Except as stated in section (c), a lawyer shall not represent a client or, where representation has commenced, shall, notwithstanding RCW 2.44.040, withdraw from the representation of a client if:
(1) The representation will result in violation of the Rules of Professional Conduct or other law;
. . . .
[8] Former RPC 1.7:

CONFLICT OF INTEREST; GENERAL RULE
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) Each client consents in writing after consultation and a full disclosure of the material facts (following authorization from the other client to make such a disclosure).
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
. . . .
[9] In re Bonet, 144 Wash.2d at 509, 29 P.3d 1242.
[10] According to the ABA Standards at 10, sanctions require the following state of mind:

4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.
4.33 Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.
4.34 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.