

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE DEC 2 2 2016

~~Madsen, C.J.~~
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Dec 22, 2016

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Disciplinary Proceeding Against | ) ) ) | No. 201,435-6 |
| DONALD PETER OSBORNE, | ) ) | En Banc |
| An Attorney at Law. | ) ) ) ) | Filed _____ DEC 2 2 2016 _____ |

OWENS, J. — A hearing officer for the Washington State Bar Association Office of Disciplinary Counsel (ODC) found that attorney Donald Peter Osborne committed five violations of the Rules of Professional Conduct (RPC) because of events surrounding a will he drafted for a sick, elderly woman that made him the residual beneficiary of her $600,000 estate. Following a disciplinary hearing, the hearing officer recommended disbarment. Osborne did not appeal to the Washington State Bar Association Disciplinary Board (Board).

Since Osborne did not appeal, the Board considered whether to order sua sponte review under the Rules for Enforcement of Lawyer Conduct (ELC). Here, the rules provide, "The Board should order sua sponte review only in extraordinary

circumstances to prevent substantial injustice or to correct a clear error." ELC 11.3(d). The Board declined sua sponte review. After sua sponte review was declined, Osborne filed a notice of appeal to this court. We issued an en banc order limiting the scope of review in this case to whether the Board was required to order sua sponte review under ELC 11.3(d). Osborne asks us to decide whether the hearing officer's recommendation of disbarment was unjust or clear error. He also makes several other arguments, but they are beyond the scope of review we granted.

Since the hearing officer's recommendation of disbarment was neither unjust nor clear error, we hold that the Board was not required to order sua sponte review. Additionally, after conducting our own independent review of the record, we find no reason to depart from the hearing officer's recommendation. We affirm the hearing officer's recommendation to disbar Osborne from the practice of law.

## FACTS

In 1986, Osborne drafted wills for husband and wife George and Elizabeth Hancock. After George Hancock died in 2003, Osborne revised Elizabeth Hancock's will. The 2003 will named a few charities as residual beneficiaries. In 2009, Hancock fell ill and Osborne revised her will, making himself the residual beneficiary of her estate.

Starting after Hancock's husband died in 2003, her neighbors and friends, William and Susan Spencer, spent time with her and helped her around the house.

They lived across the street from each other for many years. The Spencers could view Hancock's home through a large window. They took care of her house and yardwork, cooked meals, and sometimes gave her sponge baths. They had a signaling system using a porch light and kitchen blinds that Hancock could use to alert the Spencers that she needed help. J. Scott Greer, an attorney, was also familiar with the happenings at the Hancock home as he likewise lived across the street from Hancock and next to the Spencers.

In August 2009, Hancock experienced a fall and was hospitalized. During her hospital stay, Hancock asked the Spencers to contact "a lawyer" to help her update her will. Hancock did not identify Osborne by name and only told them to look in her address book under "lawyer." Her address book contained the entry "'Donald P. Osborne, Attorney at Law'" with an address and phone number. Hr'g Officer's Findings of Fact, Conclusions of Law & Recommendations (FF/CL) at 4 (Opening Br. of Appellant, App. A).

On September 22, while hospitalized, Hancock gave Osborne power of attorney over her financial affairs, but not over health care decisions. Hancock indicated that she wanted her daughter to have decision-making power over her health care. However, on the same day, Osborne signed a "Physician's Order for Life Sustaining Treatment" (POLST) on Hancock's behalf, despite not having power of attorney over her health care. Osborne told hospital employees that he was not authorized to sign

3

the POLST, and even struck that part of the form indicating he signed it pursuant to having power of attorney. The hospital later voided the POLST because Osborne lacked authority. Despite admitting that he lacked authority to sign the POLST, he testified at the hearing that his power of attorney gave him authority to sign it.

During October of that year, Hancock consulted with Osborne about revising her 2003 will. No one else was present for their conversation. Osborne directed his assistant, Jean Phillips, to prepare the will based on his handwritten notes. The primary difference between the 2003 will and the 2009 will was that charities were no longer the residual beneficiaries of her estate; instead, Osborne was named as the residual beneficiary. The residue included her home, valued at $600,000. Hancock executed the will on October 14, 2009. It bore witness signatures of Phillips and Elaine Kerns—a person that Phillips admits was not actually in the room to witness Hancock's signing. Phillips has never seen or met Elaine Kerns. Hancock died 13 days after executing the revised will. Two days after, Osborne sought to probate the 2009 will and had himself appointed as personal representative of Hancock's estate.

The relationship between Osborne and Hancock was described at Osborne's later attorney discipline hearing. Osborne admitted that he was not related to Hancock either by blood or marriage. However, Osborne testified about their friendship, stating that he checked on her at her home between 2003 and 2009. He said they exchanged recipes and would socialize in her back yard. He admitted that no one else

was present for these visits. He did not corroborate his testimony regarding their friendship with any evidence or witnesses. After she became ill, Osborne began taking care of her home and doing her laundry.

Prior to the 2009 will, the Spencers had never seen Osborne at Hancock's house. Greer also testified that he had never seen Osborne at Hancock's home until after she became ill. Several witnesses testified at the hearing regarding their long friendships with Hancock, but none of them had heard of Osborne. For instance, Toni Grandaw, who had known Hancock for over 50 years, testified that she socialized with Hancock regularly. The two discussed Hancock's friends like the Spencers, her daughter and family, and financial and legal matters. However, Hancock had never mentioned knowing Osborne to Grandaw until she was hospitalized. Hancock told Grandaw that she wished to change her will, but Grandaw was "flabbergasted" that Hancock devised her estate to Osborne since Hancock never previously mentioned him. *Id.* at 6.

After Osborne had himself formally appointed as personal representative following Hancock's death, the Spencers saw Osborne remove personal property from Hancock's home. They saw Osborne remove "boxes, plants and clothing" including "fur coats." *Id.* at 15. Osborne gave the Spencers a check from Hancock's estate for $15,000 even though Osborne had shown the Spencers a prior will that devised them only $10,000. Since the amount was different, Mr. Spencer had concerns and visited

Greer, since he is an attorney. When Greer saw that Osborne was both beneficiary and personal representative, he became suspicious and contacted an estate attorney, Randolph Petgrave.

Greer and Petgrave approached Osborne about the 2009 will and vocalized their concerns. Osborne admitted to Greer and Petgrave that he drafted the will and was named as a beneficiary and personal representative. He also told them that Hancock did not seek independent counsel and that he had not advised her to do so. Despite their account, Osborne later testified at his disciplinary hearing that he advised her that she had a right to seek independent counsel. Osborne produced handwritten notes he said Hancock initialed that indicated that she waived her right to consult outside counsel.

In 2010, Hancock's daughter, represented by Petgrave, petitioned for Osborne's removal as personal representative and for return of Hancock's personal property. The superior court removed Osborne and appointed attorney Barbara Coster as personal representative. In June 2010, the superior court twice ordered Osborne to deliver Hancock's personal property to Coster. Osborne filed pleadings with the superior court that he had relinquished all of Hancock's records and property to Coster. He also gave deposition testimony in 2011 that he had disposed of Hancock's identification card, credit cards, and financial documents. Following a superior court judgment against Osborne, the sheriff executed a search on Osborne's home. The

sheriff found Hancock's property at Osborne's residence, including her identification, credit cards, and financial records. Eventually, in November 2011, the lawsuit settled and Osborne paid $200,000.

Based on the above conduct, the ODC charged Osborne with five violations of the Rules of Professional Conduct by formal complaint:

**COUNT 1:** By preparing the 2009 will, which gave him a substantial gift from Ms. (Elizabeth) Hancock's estate, Respondent violated RPC 1.8(c).

**COUNT 2:** By naming himself as P(ersonal) R(epresentative) of Ms. Hancock's estate while simultaneously making himself the residual beneficiary while representing Ms. Hancock, Respondent violated RPC 1.7(a)(2).

**COUNT 3:** By filing a declaration with the court on February 24, 2011, asserting that he had returned all property formerly belonging to Ms. Hancock to the estate and/or successor PR when he knew had not and/or by knowingly making similar false assertions in other pleadings, Respondent violated RPC 3.3(a), RPC 4.1(a), and/or RPC 8.4(c).

**COUNT 4:** By failing to return property formerly belonging to Ms. Hancock to the estate and/or the successor PR despite being ordered to do so by the court, Respondent violated RPC 3.4(a), RPC 3.4(c), and/or RPC 8.4(j).

**COUNT 5:** By purporting to have authority to execute the September 2009 POLST and/or by entering Ms. Hancock's safety deposit box on October 27, 2009, under purported authority of the power of attorney granted him by Ms. Hancock, which had expired, Respondent violated RPC 8.4(c).[1]

---

[1] ODC dismissed the portion of count 5 pertaining to entering Ms. Hancock's safety deposit box; thus, the hearing officer's finding that Osborne violated RPC 8.4(c) pertained only to Osborne's execution of the POLST without authority. FF/CL at 2.

*Id.* at 1-2. On May 6, 2015, following a six-day disciplinary hearing, the hearing officer issued her findings of fact and conclusions of law. She determined that Osborne violated the RPC in each of the five counts and recommended disbarment. Osborne did not appeal the decision, and the Board declined sua sponte review. Osborne appealed to this court.

As explained in more detail below, this court ruled following its en banc meeting on January 7, 2016, that an attorney can appeal the Board's decision declining sua sponte review. This court limited the scope of this appeal, however, to "whether the Disciplinary Board erred by not finding that sua sponte review was required to 'prevent substantial injustice or to correct a clear error,'" under ELC 11.3(d). Order, *In re Disciplinary Proceeding Against Osborne*, No. 201,435-6, at 1 (Wash. Jan. 22, 2016).

Osborne raises a number of issues. Some are within the scope of this court's review, and others are not. First, we discuss his four issues and whether sua sponte review was necessary under ELC 11.3(d). Second, we discuss why Osborne's other arguments do not merit finding that the Board erred.

## ISSUES

1.     Did the Board err by declining sua sponte review under ELC 11.3(d)?

2.     Do Osborne's other issues merit finding that the Board erred?

## ANALYSIS

*1. The Board Did Not Err by Declining Sua Sponte Review*

Osborne identifies four specific issues that he argues required the Board's

review: (1) whether the exception of a "close, familial relationship" in RPC 1.8(c)

included Osborne, (2) whether disbarment was the proper sanction for Osborne's

conflict of interest as personal representative and residual beneficiary, (3) whether

Osborne's representations to the court that he had returned Hancock's property when

he had not were material false statements of fact, and (4) whether signing the POLST

form without authority violated the RPC. Opening Br. of Appellant at 14-15. We

conclude that the Board did not err by declining sua sponte review of any of these

issues.

As discussed below, if neither party appeals a hearing officer's decision, ELC

11.3 provides for ordering sua sponte review only in narrow circumstances. The rule

states, "The Board should order sua sponte review only in extraordinary

circumstances to prevent substantial injustice or to correct a clear error." ELC

11.3(d). Here, it was not a close call whether Osborne's conduct violated the RPC

since it clearly did. Notably, he does not challenge the hearing officer's findings of

fact. None of Osborne's issues presented an extraordinary circumstance such that the Board should have ordered sua sponte review to prevent substantial injustice or clear error. Thus, sua sponte review was not required. Each of Osborne's issues are discussed below.

### a. Sua Sponte Review Was Not Required for the Hearing Officer's Interpretation of "Close, Familial Relationship" in RPC 1.8(c)

Review was not required of Osborne's first issue because the hearing officer's interpretation of "familial relationship" was neither unjust nor clear error under ELC 11.3(d). Count 1 charged Osborne with preparing Hancock's will giving him a substantial gift under RPC 1.8(c). FF/CL at 1. Osborne contends that the Board's review was required concerning the meaning of RPC 1.8(c)'s "close, familial relationship." As explained below, the hearing officer correctly found that Osborne did not share a familial relationship with Hancock. Thus, this issue presents neither injustice nor clear error.

Lawyers are prohibited from preparing a will giving the lawyer a "substantial gift from a client . . . unless the lawyer . . . is related to the client." RPC 1.8(c). Relatives include a "spouse, child, grandchild, parent, grandparent or other relative or individual with whom the lawyer . . . maintains a close, familial relationship." *Id.* Formerly, the only exception was "where the client [was] *related* to the donee." Former RPC 1.8(c) (1995) (emphasis added). In 2006, the rule was amended to expand the relative exception. According to the committee on amendments to the

rules, the intention was to allow for flexibility of who qualified as a relative. *Reporter's Explanatory Memorandum to the Ethics 2003 Committee's Proposed Rules of Professional Conduct, in* WASH. STATE BAR ASS'N, REPORT AND RECOMMENDATION OF THE SPECIAL COMMITTEE FOR EVALUATION OF THE RULES OF PROFESSIONAL CONDUCT (ETHICS 2003) TO THE BOARD OF GOVERNORS 155 (Mar. 2004), http://wsba.org/Resources-and-Services/Ethics/Ethics-2003/Final-Report [http://perma.cc./ZA4P-LTDH]. However, the amendment is not so flexible it includes casual acquaintances. If it did, the exception would swallow the rule entirely. The amendment merely expands the term "relatives" but still requires a "familial" relationship. Furthermore, the comments to the RPC state that if a gift is given by will, "the client should have the detached advice that another lawyer can provide. The sole exception to this Rule is where the client is a relative of the donee." RPC 1.8 cmt. 7.

Osborne contends that the meaning of "close, familial relationship" should be reviewed here; however, he makes no meaningful argument that he actually maintained a close relationship with Hancock. At the hearing, Osborne admitted that he was not a relative by blood or marriage to Hancock. Even if true, his testimony that he checked on her over the years does not amount to a family-like relationship. Hancock's close friends testified that they had never even heard of Osborne prior to her hospitalization. Thus, the hearing officer correctly found that Osborne had only a

"casual friendship" with Hancock. FF/CL at 8. And according to Greer and Petgrave, Osborne admitted that he sought no independent counsel, which could have absolved this violation. Since Osborne does not meet the relative exception, he plainly violated RPC 1.8(c). Thus, as to count 1, it was neither unjust nor clear error that the hearing officer found that Osborne violated RPC 1.8(c). As such, sua sponte review was not required.

### b. Sua Sponte Review Was Not Required for the Hearing Officer's Finding That Osborne's Conflict of Interest Was Improper

The Board was not required to review Osborne's second claim because disbarment is appropriate for his conflict of interest. Count 2 charged Osborne with violating RPC 1.7(a)(2) when he was simultaneously named personal representative and residual beneficiary of Hancock's estate. Osborne apparently argues that the Board should have reviewed whether disbarment was appropriate where "there was no finding that Ms. Hancock lacked testamentary capacity." Opening Br. of Appellant at 14. However, disbarment is the appropriate sanction for a concurrent conflict of interest in Osborne's circumstances.

Lawyers are prohibited from representing a client if a concurrent conflict exists. RPC 1.7(a). A concurrent conflict exists if "there is a significant risk that the representation . . . will be materially limited by . . . a personal interest of the lawyer." RPC 1.7(a)(2). Here, the hearing officer found that Osborne had a concurrent conflict because he was both personal representative and residual beneficiary of Hancock's

estate. The personal representative of an estate has a fiduciary duty to beneficiaries to act in the estate's best interest; when he or she fails to meet that duty, the beneficiaries can sue the representative. *Trask v. Butler*, 123 Wn.2d 835, 843, 872 P.2d 1080 (1994). This principle is plainly at odds with Osborne's simultaneous representation of the estate while being the residual beneficiary of the estate. Osborne's interests to the estate and to himself as beneficiary would be divided. As such, there is significant risk that his representation of the estate would be materially limited by his own interests.

Disbarment is the appropriate sanction. To review a recommended sanction, this court follows a two-step process based on the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991). *In re Disciplinary Proceeding Against Carpenter*, 160 Wn.2d 16, 23 n.2, 155 P.3d 937 (2007). First, the court considers the presumptive sanction and looks to the ethical duty violated, the lawyer's mental state, and the harm caused. *Id.* Next, the court considers aggravating or mitigating factors. *Id.*

The presumptive sanction is disbarment where an attorney knowingly represents a client with intent to benefit the lawyer, without informed consent, and is potentially injurious to the client. *See* STANDARDS std. 4.31(a). Here, Osborne knowingly engaged in an apparent conflict of interest that was seriously injurious to Hancock's estate and benefited only Osborne. He did not obtain informed consent or

13

advise independent counsel. Thus, Osborne's conduct meets standard 4.31(a) and the presumptive sanction is disbarment. The hearing officer cited several aggravating factors, including selfish motive and vulnerable victim (Hancock was sick and elderly), while the only mitigating factor was an absence of prior disciplinary record. *See* FF/CL at 32-34. The mitigating factor does not outweigh Osborne's knowing and purely self-interested conflict of interest. That Hancock was not specifically shown to lack testamentary capacity is of no consequence. Disbarment was appropriate for Osborne's violation of RPC 1.7(a). Thus, sua sponte review was not required for this issue.

### c. *Sua Sponte Review Was Not Required To Evaluate Whether Osborne's Actions Were "Material" to Counts 3 and 4*

Next, the Board was not required to review the hearing officer's finding that Osborne made false statements of material fact and failed to follow a court order. Osborne removed Hancock's property from her home and did not return it despite telling the court he had and being ordered to do so. Osborne argues that the Board should have reviewed whether he violated the RPCs "when there was no factual finding that anything he failed to turn over was material." Opening Br. of Appellant at 14-15.

Count 3 charged Osborne with declaring he had returned Hancock's property when he had not. Lawyers are prohibited from knowingly making "a false statement of fact or law to a tribunal" or to another person. RPC 3.3(a)(1); RPC 4.1(a). RPC

14

8.4(c) prohibits dishonest conduct. Here, Osborne filed pleadings with the court stating that he had returned Hancock's personal property. FF/CL at 16. However, a sheriff found her property at Osborne's home. *Id.* at 17. Thus, when Osborne filed declarations that he had returned the property that was still inside his own home, it was apparent that he made a false statement of material fact or law to a tribunal in plain violation of RPC 3.3(a)(1), 4.1(a), and 8.4(c).

Count 4 charged Osborne with failure to comply with a court order. Under the ethics code, a lawyer may not "conceal a document or other material." RPC 3.4(a). Additionally, RPC 3.4(c) states that a lawyer cannot "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." The hearing officer found that in June 2010, the superior court twice ordered Osborne to deliver Hancock's personal property to Coster. FF/CL at 15-16. Although Osborne gave deposition testimony that he disposed of Hancock's identification card, credit cards, and financial documents, the sheriff found those items in Osborne's house. *Id.* at 16-17. Thus, when Osborne concealed Hancock's property after being ordered to return it, he violated RPC 3.4(a) and 3.4(c).

Consequently, the facts plainly indicate that Osborne lied and failed to comply with a court order. Since the court *ordered* Osborne to return all of Hancock's property (including her financial documents) to the new personal representative, it can

15

be inferred that the property was "material" because it was likely helpful to probate the estate. His false statement about this property was also "material." Thus, Osborne's argument fails. Since he plainly violated the RPC provisions based on this conduct, the Board was not required to order sua sponte review of this issue.

### d. Sua Sponte Review Was Not Required To Evaluate Osborne's Violation When He Signed the POLST Form

The Board was also not required to review whether Osborne violated the RPCs by signing the POLST form without authority. Osborne argues that admitting to hospital staff he lacked authority should absolve any violation. RPC 8.4(c) states that it is professional misconduct for an attorney to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." This court questions "whether the attorney lied. No ethical duty could be plainer." *In re Disciplinary Proceedings Against Dann*, 136 Wn.2d 67, 77, 960 P.2d 416 (1998). Here, Hancock gave Osborne power of attorney over her financial affairs, but not over her health care decisions. FF/CL at 9-10. When he signed the form without authority, he engaged in an act of dishonesty, misrepresented his authority in writing, and thus violated RPC 8.4(c). Admitting his lack of authority and signing it anyway is no absolution because signing the document was the error. To prevent this violation, Osborne simply could have withheld his signature to comply with the RPC. Thus, the Board's sua sponte review was not required as he plainly violated RPC 8.4(c).

16

In sum, none of Osborne's claims that the Board was required to order sua sponte review under ELC 11.3(d) have merit. Osborne also argues other issues that are beyond the scope of review that we made clear by order on January 22, 2016. We discuss these issues in the next section.

### 2. *Osborne's Other Issues Do Not Merit Finding That the Board Erred*

Osborne asks us to consider additional issues, apparently to bolster his argument that the Board erred by declining sua sponte review. He asks this court to determine the following: (1) the standard of review for evaluating a Board order declining sua sponte review and (2) whether review of only the hearing officer's decision (instead of the full hearing record) is inadequate, denying him due process and rendering ELC 11.3 unconstitutional. Importantly, Osborne's arguments ignore the court's order limiting the scope of review in this case. As explained below, these arguments are meritless.

For context, some additional facts are necessary. After the hearing officer issued her recommendation on May 6, 2015, the parties had 30 days to appeal to the Board. Neither party appealed. The members of the Board received the "Hearing Officer's Findings of Fact, Conclusions of Law, and Recommendation" for their consideration when deciding whether to order sua sponte review. On June 23, 2015, by a 14-0 decision, the Board issued an order declining sua sponte review and

17

adopting the hearing officer's recommendation. On July 1, 2015, Osborne filed a notice of appeal to this court.

We have previously considered a procedural piece of Osborne's case—whether the ELC rules allow him to appeal at all. The ODC filed a motion to strike Osborne's notice of appeal, arguing that he could not appeal the Board's order declining sua sponte review. The Supreme Court clerk denied it, finding that Osborne could appeal under ELC 12.3(a). ODC filed a motion to modify the clerk's ruling and an accompanying motion for an extension of time since the motion to modify was a few days late. The matter was presented to the November and December 2015 meetings of a department of this court, and eventually to the en banc meeting on January 7, 2016. The court issued a unanimous order that the Board's order declining sua sponte review is appealable under ELC 12.3(a). Order, *supra*, at 1. It limited this court's review as follows:

> Mr. Osborne's appeal of the Order Denying Sua Sponte Review and Adopting the Hearing Officer's Decision is limited to ONLY the record and scope of the Disciplinary Board's review as required by ELC 11.3(a);
>
> The record of this review is therefore limited to the Hearing Officer's Findings of Fact, Conclusions of Law, and Recommendation;
>
> The scope of the issue on appeal is limited to whether the Disciplinary Board erred by not finding that sua sponte review was required to "prevent substantial injustice or to correct a clear error," *see* ELC 11.3(d).

*Id.* As these facts illustrate, Osborne's additional arguments fail because they are beyond this scope of review.

First, as a preliminary matter, Osborne asks this court to define a standard of review for the consideration of a denial of sua sponte review by the Board. We have well established the standard for reviewing appeals of hearing officers' recommendations. The standard of review for consideration of an order by the Board simply adopting the hearing officer's recommendation should be no different. This court gives "considerable weight to the hearing officer's findings of fact" and treats unchallenged findings as verities on appeal. *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 329-30, 157 P.3d 859 (2007). We review conclusions of law de novo. *In re Disciplinary Proceeding Against Jackson*, 180 Wn.2d 201, 220, 322 P.3d 795 (2014). Since Osborne tethered his appeal to his due process arguments, he argues de novo review of the full record should apply. Our order limiting its review to the hearing officer's findings implies that the traditional standard of review will apply. No heightened standard is necessary.

Second, Osborne's principal argument is that the record on appeal is limited and therefore inadequate for review and that such a limit violates his due process rights, rendering ELC 11.3 unconstitutional. This argument fails for two reasons. First, Osborne did not appeal to the Board. The rules provide that the Board will review a hearing officer's decision if a party appeals within 30 days or if the Board

orders sua sponte review. ELC 11.2(b). Osborne could have sought additional review to take advantage of the process provided by the rules. Instead, he apparently relied on sua sponte review. He failed to realize that sua sponte review is ordered *only* in "extraordinary circumstances," with the goal of remedying injustice or clear error. ELC 11.3(d). As described above, sua sponte review was not warranted here.

To be sure, there are due process concerns at issue in an attorney discipline proceeding because financial penalties and the deprivation of a professional license are at stake. *See LK Operating, LLC v. Collection Grp., LLC*, 181 Wn.2d 48, 68, 331 P.3d 1147 (2014). However, for that reason, the rules ensure adequate process by allowing for an appeals process. Osborne failed to take advantage of that process. Even still, the rules require board "consideration" of sua sponte review if parties do not appeal. ELC 11.3(a). Osborne argues that no evidence exists showing that the Board "considered" his matter. This is incorrect. The Board's ruling plainly states, "This matter came before the Disciplinary Board for consideration of *sua sponte* review pursuant to ELC 11.3(a). On June 11, 2015, the Clerk distributed the attached decision to the Board." *See* Disciplinary Bd. Order Declining *Sua Sponte* Review and Adopting the Hearing Officer's Decision, *In re Osborne*, No. 13#00082 (June 23, 2015) (Opening Br. of Appellant, App. B). About 12 days elapsed between receiving the documents and issuing its order declining sua sponte review, which indicates that the Board had time for consideration. The appeals process illustrates that ample

process is available. That sua sponte review was not warranted in his case does not render the process unconstitutional.

The second reason Osborne's argument fails is that we specifically limited the scope of review "to only the record and scope of the Disciplinary Board's review as required by ELC 11.3(a)," Order, *supra*, at 1 (emphasis omitted), which is the hearing officer's decision. We sought to consider only "whether the Disciplinary Board erred by not finding that sua sponte review was required to 'prevent substantial injustice or to correct a clear error,' *see* ELC 11.3(d)." *Id.* Osborne's due process argument is beyond that scope. By asking the court to find that due process concerns require it to review the entire record before the hearing officer, Osborne asks us to overturn the Board's unanimous order. Indeed, the order itself indicates that the full record is not required.

Finally, Osborne contends that remedies are necessary to cure the alleged defects in this process. Since we find that there are no defects rendering this process unconstitutional, no remedies are necessary. Consequently, we find that Osborne's extraneous arguments are beyond the scope of this court's order limiting review and do not otherwise merit finding that the Board erred by declining sua sponte review.

## CONCLUSION

We find that the Board did not err by declining sua sponte review because review was not required to prevent injustice or correct clear error under ELC 11.3(d).

Since the hearing officer's findings of fact plainly evidence Osborne's five violations of the RPC, the hearing officer's recommendation is neither unjust nor clear error. We conclude the Board did not err by declining sua sponte review.

We also find no reason to depart from the hearing officer's recommendation of disbarment. The hearing officer's findings of fact establish that Osborne knowingly and with dishonest intent violated multiple RPCs and caused serious injury to Hancock's estate. Based on those findings and our own independent review of the record, we order Donald Peter Osborne disbarred from the practice of law.

*In re Disciplinary Proceeding Against Osborne*
No. 201,435-6

WE CONCUR:

23

*In re Disciplinary Proceeding Against Osborne (Donald Peter)*

No. 201,435-6

WIGGINS, J. (concurring)—I concur in the court's unanimous decision to disbar Donald Peter Osborne from the practice of law. I write separately to express my opinion that the court should never have granted review of Osborne's case. If Osborne did not even care enough to appeal to the Washington State Bar Association Disciplinary Board (Board), we should not have granted him the right to appeal to this court.

The beginning point of analysis is the Rules for Enforcement of Lawyer Conduct's (ELC) description of the right of a respondent attorney to appeal. Under ELC 12.2 ("Methods of Seeking [Supreme Court] Review"), there are two ways for a party to appeal a written opinion or order entered by the Board under ELC 11.12(e): (1) review as a matter of right and (2) discretionary review. ELC 12.2(a). For appeals "as a matter of right," the ELCs state, "The respondent lawyer or disciplinary counsel has the right to appeal a Board decision recommending suspension or disbarment. There is no other right of appeal." ELC 12.3(a).

Since the only appeal permitted by ELC 12.3(a) is "a Board decision recommending suspension or disbarment," we look to determine when such a board decision is made. ELC 11.12, titled "Decision of Board," describes the process of reaching a board decision. To begin with, "[b]oard review is based on the hearing officer's Decision, the parties' briefs filed under rule 11.9, and the record on review."

ELC 11.12(a). After consideration, the Board must enter a written order or opinion. ELC 11.12(e). Clearly, if there is an appeal and the Board follows these procedures, there is a board decision that can be appealed to our court.

But Osborne did not appeal the hearing officer's decision to the Board. When neither party appeals, the Board's only role is to decide whether to grant sua sponte review. ELC 11.3(a). For the Board's consideration, the only record before it for review is the hearing officer's decision. ELC 11.3(a). The Board does not receive or consider hearing transcripts, exhibits, or briefing from the parties. ELC 11.3(a). The Board, considering only the hearing officer's decision, "should order sua sponte review only in extraordinary circumstances to prevent substantial injustice or to correct a clear error." ELC 11.3(d). If the Board declines sua sponte review, "the hearing officer's recommendation becomes the final decision upon entry of the Board's order declining review." ELC 10.16(d). By declining sua sponte review, the Board did not make a "decision recommending suspension or disbarment." Thus, there was no right to appeal its declination.

Significantly, the Board includes not just lawyers, but four nonlawyer members as well. ELC 2.3(b). By skipping board review, Osborne has evaded public participation in the consideration of his case.

The court's opinion grants Osborne yet another favor when the court employs the same standard of review afforded to a lawyer appellant who has properly appealed to the Board and then to this court. Majority at 18-19. This is inappropriate because the issue is not whether the hearing officer's decision was right or wrong, but whether

2

the Board should have found that sua sponte review was required to "prevent substantial injustice or to correct a clear error." ELC 11.3(d). This is a more stringent standard than the standard we employ when a lawyer appeals to the Board and then to this court. As a result, there is little difference between the majority's full analysis of Osborne's appeal and the analysis we afford a proper appeal through the Board to this court.

Finally, denying Osborne's appeal of the Board's denial of sua sponte review does not deprive Osborne of one last opportunity for review by this court. ELC 12.2(b) reserves to the court the ability to grant our own sua sponte review: "This rule does not affect the Court's power to review any Board decision recommending suspension or disbarment and to exercise its inherent and exclusive jurisdiction over the lawyer discipline and disability system." This court reviews every decision recommending suspension or disbarment and decides whether to grant sua sponte review of any decision recommending suspension or disbarment. Accordingly, instead of reviewing whether the Board appropriately denied sua sponte review, we should be exercising our own discretion to deny sua sponte review by this court.

For all these reasons, I would have denied review. But despite my disagreement with the decision to grant review, I respectfully concur in the result.

_____
Wiggins, J.

Madsen, C.J.

4