
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SUSAN CAMICIA, | ) | No. 74048-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ANDREW G. COOLEY and KEATING | ) | |
| BUCKLIN & MCCORMACK, INC., P.S., | ) | |
| | ) | |
| Appellants, | ) | UNPUBLISHED OPINION |
| | ) | |
| HOWARD S. WRIGHT | ) | |
| CONSTRUCTION COMPANY, a | ) | |
| Washington corporation and CITY OF | ) | |
| MERCER ISLAND, a municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | FILED: February 21, 2017 |
| | ) | |

MANN, J. — Andrew Cooley and his law firm Keating Bucklin & McCormack (collectively Cooley), challenge discovery sanctions of $10,000 imposed jointly and severally against Cooley and their client the City of Mercer Island (City), for willful violations of the discovery rules. Cooley asserts that the trial court abused its discretion in concluding: (1) that the City and Cooley failed to produce Fire Department records

pertaining to bicycle injuries, (2) that Cooley violated discovery rules based on the City's destruction of tort-claim records, and (3) that the trial court generally erred in imposing sanctions on Cooley. Because the trial court did not abuse its discretion in imposing sanctions, we affirm.[1]

## FACTS

On June 19, 2006, Susan Camicia hit a wooden bollard while riding her bicycle on the I-90 Trail in the City. The accident left her a quadriplegic. Mercer Island Police Officer Ryan Parr responded and photographed the scene on the day of Camicia's accident. The following day, the City hired Cooley to defend it against potential personal injury claims arising from Camicia's accident.

Cooley is an experienced defense attorney and has practiced law for over thirty years. Cooley was involved in Camicia's case from its beginning. He directed the case's themes and strategy, took depositions, defended depositions, conducted witness interviews, worked with experts, and oversaw discovery. In defending the City, Cooley worked closely with the City Attorney from June 20, 2006, until 2015.

Camicia sued the City in August 2007. In October 2007, she served her first discovery requests on the City. Relevant requests and the City's October 30, 2007, responses are as follows:

> **[Interrogatory] 14.** Have you or your agents, investigators, lawyers or anyone else investigated any incidents involving danger, injury or death to bicyclists or pedestrians because of fences, bollards or other obstructions or defects in any sidewalk, path or public right-of-way in the City of Mercer Island, either before or after this incident? If so, please identify or describe

---

[1] Camicia attached a declaration and documents that were not part of the record to her opening brief. After Cooley moved to strike the extra-record materials, Camicia moved to supplement the record. We grant Cooley's motion to strike and deny the motion to supplement. We did not considered the extra-record materials.

-2-

all such investigations and accident locations, the name, address, telephone number and job title of each person who reported or investigated each accident; the date of each accident, the name and number of each incident report and investigation report, and the name, address, telephone number and job title of each person who has custody of the reports or investigation documents.

**ANSWER:** Objection. Compound. Vague as to time. Overly broad as to location. If by "incidents" you mean accidents, there have never been any bicycle vs. bollard accidents to the City's institutional knowledge. Otherwise the question is vague as to time, the word "incident" and "danger." Certainly there have been pedestrian incidents in the City since its incorporation.

There was one bike accident in October 2007, where a bicyclist turning around fell off of a bicycle and partially struck a cement post on EMW. See police report.

**[Interrogatory] 15.** Are you aware of any notices, reports, complaints, claims or other communications from any source about safety concerns to pedestrians or bicyclists from fences, bollards or other obstructions or defects in any sidewalk, path or public right-of-way in the City of Mercer Island, either before or after this incident? If so, please identify or describe the dates and details of all such notices, reports or complaints, the names, addresses and telephone numbers of all persons who made and received them, all documents electronic communications or tangible things concerning them, and all decisions or actions taken in response to such notices, reports or complaints.

**ANSWER:** Objection. Compound. Vague as to what is meant by "notice" or "other communications" and "other obstructions or defects."

. . . .

**[Interrogatory] 20.** Do you, your representatives, agents or attorneys have any photographs, movies, videos, diagrams, models, surveillance photography or videos or any other depictions concerning the physical facts or scene of the incident, the plaintiff, plaintiff's injuries, or any other potentially relevant object, matter or issue in this case? If so, please identify the subject, date and person preparing each such representation, the nature of the representation (whether map, diagram, model, photograph, movie, etc.), and the name and address of the present custodian.

**ANSWER:** Yes, see attached.

-3-

Please produce genuine, authentic originals or copies of the following documents and things:

**11.** All incident reports, investigative reports or other documents, drawings, computer data, photos, movies, videos or depictions relating to other bicycling and pedestrian accidents and related safety concerns as referenced in Interrogatory Nos. 14 and 15.

**RESPONSE:** See documents previously attached. [The City produced a 2007 police report about a bicyclist who turned around and fell off his bicycle.]

The City's responses did not indicate that it was withholding any information responsive to Camicia's discovery requests. Nor did the City seek a protective order to limit or eliminate its obligation to respond fully to Camicia's requests.

City officials knew, since before Camicia's accident, that records of bicycle accidents, including bike-bollard collisions, were kept by the City's Fire Department. Despite knowing this, neither the City nor Cooley searched for records of other bicycle accidents responsive to Camicia's discovery requests in the City's Fire Department. The trial court found that "Cooley strategically ignored looking at Fire Department records."[2] "Nor was a complete review made of the Police Department, City Clerk's or City Attorney's files or records where they should have known that responsive information might be located."[3]

There were records of other bicycle accidents. In July 2005, a bicyclist was injured when his bicycle struck a bollard on a portion of the I-90 Trail that was located on a Washington Department of Transportation right-of-way within the City. Mercer Island Fire Department responded to the accident and prepared a report of the incident.

---

[2] Clerk's Papers (CP) at 1344.
[3] CP at 1344.

-4-

In August 2005, the City Parks Director wrote in an e-mail to the City Engineer that a "cyclist-bollard post collision" had recently occurred. The Parks Director's e-mail was also sent to the City's Traffic Engineer and other City personnel. The City did not produce this e-mail in response to Camicia's initial discovery requests.

There were numerous complaints made about the wooden bollards. One week after Camicia's accident, David Smith complained to the City about the bollard posts and the danger they posed to bicyclists. Smith's complaint was documented in City records. Between February and June 2007, attorney John Duggan made a series of complaints to the City about the risks that the wooden bollards on the I-90 Trail posed to bicyclists. The City Attorney communicated with Duggan about these complaints, and the City's Traffic Engineer and Attorney documented these complaints in the City's records. In August 2007, Rebecca Slivka of the Bicycle Watchdog group also complained to the City about the risks posed by the bollards to bicyclists. The City Attorney was informed of this complaint. Later, in August 2009, Joshua Putnam also complained about the risks posed by the bollards to bicyclists. The City's Development Director documented Putnam's complaint in the City's records. The City and Cooley did not disclose records of other bicycle accidents or safety concerns in its response to Camicia's initial discovery requests.

The photos that Officer Parr took of the scene on the day of Camicia's accident also were not produced in the City's October 2007 discovery responses. These photos were not produced to Camicia until May 6, 2009, after Cooley had deposed Camicia twice and all but one of Camicia's expert witnesses. The trial court found that the photos that Officer Parr took were relevant because they showed the scene conditions

soon after the accident occurred. For example, they showed lighting conditions and construction signs in Camicia's lane of travel. Cooley did not explain why these photos were not produced to Camicia 18 months after her first discovery requests in October 2007.

After Camicia issued her first discovery requests, the City destroyed claims and complaints that were potentially responsive to Camicia's requests. Thus, potentially responsive records were lost. For example, during the court's review of the discovery issues, the City disclosed that it had not searched its "claims for damages forms prior to their destruction. It is unclear why the City destroyed these records during pending litigation; the Deputy City Clerk testified that the destruction was in accordance with the general record-retention policy as set forth by the Washington State Archives.

On June 28, 2014, the City learned of another bicycle accident that occurred on the same day, and on the same unmarked bollard, that Camicia hit. On April 23, 2015, however, Cooley represented to Camicia's counsel in writing that "there are zero reports (of accidents) connected to [Camicia's] accident site." This was despite the City's knowledge that the Mercer Island Police Department had prepared an incident report of the accident.

On May 6, 2015, in response to concerns that the City had not responded to Camicia's initial discovery requests, trial court Judge Laura C. Inveen issued a broad discovery order. The order required the City to produce "[a]ll of its records of other bicycle accidents, including bike-bollard collisions, on its streets and bicycle trails from 1997-2014." Between May 11 and May 14, 2015, the City produced hundreds of

records of other bicycle accidents, claims, complaints, and related safety concerns responsive to Camicia's discovery requests and the May 6, 2015 discovery order.

The delay in discovering records of other bicycle accidents and other bike-bollard accidents impacted Camicia's preparation for the trial date scheduled for May 11, 2015. This resulted in a continuance of the trial date to October 2015.

After the trial was continued, Camicia moved for discovery sanctions. After briefing and argument, on September 14, 2015, the trial court issued its order on motion for sanctions and admitting evidence of other accidents. The court found that the City's "failure to respond fully to discovery was willful, as it was without reasonable excuse or justification." The court found further that the "City's and its defense counsel's responses to [Camicia's] first discovery requests were false, misleading and evasive." With respect to Cooley, the court found: "To date, Defense counsel shows no indication of a plan to change his conduct in the future. Defense counsel is unapologetic, defensive, and refuses to admit that he or the City violated discovery obligations."

The trial court concluded:

> The defendant City and its defense counsel willfully violated the discovery rules by not conducting a reasonable search for records; by not seeking a protective order if they wished to narrow the scope of discovery; by not disclosing the City's records of complaints; by falsely representing to Plaintiff "*there have never been any bicycle vs. bollard accidents to the City's institutional knowledge*"; and by not supplementing its discovery responses with correct responses when it new the response was incorrect when made.[4]

For sanctions, the trial court determined,

> a substantial monetary fine is necessary to deter future discover violations, and to punish for the violations. Given the magnitude of potential damages, the cost to the Plaintiff and to the Court for the

---

[4] CP at 1350.

resources devoted to these issues, and continuing the trial on the date scheduled, a substantial fine is in order. The Court finds that $10,000 is a conservative figure to accomplish the goals of discovery sanctions.[5]

The court ordered "as a joint and several obligation the City and Defense Counsel to pay a fine of $10,000 to the Legal Foundation of Washington . . . for the provision of legal services to those with financial need."[6] The trial court also ruled that it would allow certain evidence to be admitted and consider a "spoliation of evidence" jury instruction. The court did not exclude any of the City's witnesses or evidence.

Cooley, but not the City, timely appeals.

## ANALYSIS

Cooley assigns error to both the May 6, 2015, order on motion to appeal, and the September 14, 2015, order on motions for sanctions and admitting evidence of other accidents.[7] Cooley asserts that the trial court abused its discretion in concluding: (1) that the City and Cooley failed to produce Fire Department records pertaining to bicycle injuries, (2) that Cooley violated discovery rules based on the City's destruction of tort-claim records, and (3) that the trial court generally erred in imposing sanctions on Cooley.

We review a trial court's imposition of sanctions for noncompliance with court orders or rules for abuse of discretion. Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp, 122 Wn.2d 299, 338-39, 858 P.2d 1054 (1993). The abuse of discretion standard recognizes that deference is owed to the judicial actor who is "better

---

[5] CP at 1352.
[6] CP at 1352.
[7] Cooley challenges the court's orders as errors of law and does not assign error to the court's findings of fact. Findings of fact to which no error has been assigned are accepted as verities on appeal. Gannon v. Robinson, 59 Wn.2d 906, 371 P.2d 274 (1962).

positioned to decide the issue in question." Fisons, 122 Wn.2d at 339 (internal quotations omitted). A trial court abuses its discretion if its order is manifestly unreasonable or based on untenable grounds. Fisons, 122 Wn.2d at 339. "A trial court would necessarily abuse its discretion if it based its rulings on an erroneous view of the law." Fisons, 122 Wn.2d at 339.

"The right of discovery and the rules of discovery are integral to the civil justice system." Lowry v. Peacehealth, 174 Wn.2d 769, 776, 280 P.3d 1078 (2012). Discovery is associated with the right of access to the courts protected by article I, § 10 of our constitution. Lowry, 174 Wn.2d at 776. The "right of access includes the right of discovery by the civil rules, subject to the limitations contained therein." Doe v. Puget Sound Blood Center, 117 Wn.2d 772, 780, 819 P.2d 370 (1991) (citing WASH. CONST. art. I, § 1.). The intent of discovery is to facilitate the exchange of information between the parties without delay, excessive expense, and undue burden. Fisons, 122 Wn.2d at 340-43. A "spirit of cooperation and forthrightness during the discovery process is necessary for the proper functioning of modern trials." Fisons, 122 Wn.2d at 342. "Trial courts need not tolerate deliberate and willful discovery abuse." Magana v. Hyundai Motor America, 167 Wn.2d 570, 576, 220 P.3d 191 (2009).

When the discovery process breaks down, sanctions are appropriate "to deter, to punish, to compensate, and to educate." Magana, 167 Wn.2d at 584. As the Magana court directed:

> The discovery sanction should be proportional to the discovery violation and the circumstances of the case. "[T]he least severe sanction that will be adequate to serve the purpose of the particular sanction should be imposed. The sanction must not be so minimal, however, that it

undermines the purpose of discovery. The sanction should insure that the wrongdoer does not profit from the wrong."

167 Wn.2d at 590 (quoting Fisons, 122 Wn.2d at 355-56).

II

Cooley argues first that the trial court erred as a matter of law in sanctioning him for failing to produce Fire Department records because they are protected from production by Washington's Uniform Health Care Information Act of 1996 (UHCIA), chapter 70.02 RCW, and the federal Health Insurance Portability and Accountability Act (HIPAA). 42 U.S.C § 1320d Pub. L. No. 104-191, 110 Stat. 1936. We disagree.

At the outset, we agree with Cooley that UHCIA and HIPAA apply to the Fire Department's medical records. Emergency Medical Technicians (EMTs) are health care providers under Washington's UHCIA. A "health care provider" under UHCIA is a "person . . . otherwise authorized by the law . . . to provide health care in the ordinary course of business or practice of a profession." See RCW 70.02.010(18) (defining health care provider). EMTs are "authorized" by law to render "emergency medical care"; RCW 18.73.030(12) (defining EMT). EMTs are also "health care providers" under HIPAA. HIPAA defines a "health care provider" as "any person furnishing health care services." 42 U.S.C. § 1320d(3). EMTs provide health care services. Because EMTs are health care providers, the Fire Department's medical records are subject to UHCIA and HIPAA. Under UHCIA, "health care information" may not be provided in response to discovery without written consent of the patient. RCW 70.02.060(1).

But Cooley's argument fails for two reasons. First, contrary to Cooley's assertion, the trial court did not conclude that UHCIA and HIPAA do not apply to Fire Department records. As the trial court explained:

> To this date, Defense counsel argues that reports of accidents maintained within the City's Fire Department are not subject to disclosure due to "HIPPA". In his 4/29/15 Declaration he writes "I do not believe that it occurred to anybody that Plaintiff was also seeking medical records prepared by the Fire Department." The fact of the matter is that Plaintiff never asked for medical records.[8]

The trial court was correct, Camicia did not request health care records. "Health care records" under UHCIA "means any information, whether oral or recorded in any form or medium, that identifies or can readily be associated with the identity of a patient and directly relates to the patient's health care." RCW 70.02.010(16) (emphasis added). Camicia's 2007 discovery requests asked for investigation reports or accident reports involving bicyclists or pedestrians, including the location of the accidents. Similarly, the trial court's May 6, 2015, order required the City to produce "[a]ll of its records of other bicycle accidents, including bike-bollard collisions." The court made clear that "Plaintiff is not requesting 'health care information.'" A search of accident records in the Fire Department may well have produced responsive information concerning whether and where accidents occurred without disclosing protected "health care information." Yet, despite knowing that accident records were kept by the Fire Department, neither the City nor Cooley investigated.

Second, even if Cooley believed that all records with the Fire Department were privileged, it was not up to them to unilaterally decide to ignore the request. "A party must answer or object to an interrogatory or request for production. If the party does

---

[8] CP at 1349-50 (emphasis added).

not, it must seek a protective order under CR 26(c). CR 37(d). The party cannot simply ignore or fail to respond to the request." Magana, 167 Wn.2d at 584.

Lowry is instructive. The plaintiff in Lowry brought a medical negligence action against PeaceHealth Hospital claiming she sustained nerve damage as a result of an improper intravenous (IV) procedure. Through a CR30(b)(6) deposition, the plaintiff sought information concerning other instances of IV infusion complications or injuries. Lowry, 174 Wn.2d at 773-74. The hospital maintained a database of such instances as part of its quality improvement program but claimed that these records were privileged and exempt from discovery under RCW 70.41.200(3) (the quality improvement statute). Lowry, 174 Wn.2d at 787. Our Supreme Court disagreed, holding that while the quality review committee records themselves could not be disclosed, the hospital could consult its privileged database to identify discoverable information that fell outside of the privilege. Lowry, 174 Wn.2d at 789-90.

The Court summarized:

Finally, the burden of disclosure is upon the party who is requested to disclose. Records created for and maintained by quality improvement committees are privileged. If a hospital believes that use of this privileged information to identify unprivileged information will compromise the purpose of the statute to promote candid discussion and careful self-assessment by the hospital of its care of patients, the hospital may seek an appropriate protective order. But under our discovery rules, the burden is on the hospital to "*fully* answer all interrogatories and all requests for production." When a database such as PeaceHealth's Cubes database exists and is relevant to a discovery request, its existence must be disclosed even if the information itself is protected. It is up to the hospital to move for a protective order if it "[does] not agree with the scope of production or [does] not want to respond."

Lowry, 174 Wn.2d at 789 (quoting Fisons, 122 Wn.2d at 354). Here, while health care records maintained at the Fire Department may be privileged, this did not prevent the

City from reviewing the records to determine if there was discoverable information within those records. The City had an obligation to review the records for discoverable information, disclose the existence of the records, and if necessary, the City had the burden to seek a protective order.

City officials knew since before Camicia's accident that records of bicycle accidents, including bike-bollard collisions, were kept by the City's Fire Department. Despite knowing this, neither the City nor Cooley reviewed the Fire Department records, disclosed their existence in response to Camicia's requests nor sought the necessary protective order. As the trial court found, "In oral argument Mr. Cooley acknowledged that he has never searched Fire Department records for responses to discovery in past cases, and suggests no intent to change that practice. Given the fact that defense counsel's law practice focuses primarily on municipalities, it is highly likely this issue will come up in the future."[9]

The trial court did not abuse its discretion in basing part of its decision to sanction Cooley and the City on the failure to review the Fire Department records.

III

Cooley argues next that the trial court abused its discretion in concluding that the City and Cooley engaged in sanctionable spoliation of evidence. Specifically, Cooley argues that the tort-claim records were destroyed in the "normal course of business and in compliance with the document retention schedule issued by the State Archivist, and followed by the local agencies." While we agree that the record does not support a

---

[9] CP at 1350.

finding of spoliation, because the trial court did not base its monetary sanction on its finding of spoliation, any error is harmless.

Spoliation is "[t]he intentional destruction of evidence." Henderson v. Tyrrell, 80 Wn. App. 592, 605, 910 P.2d 522 (1996). To determine whether spoliation occurred, a court examines (1) the potential importance or relevance of the missing evidence, and (2) the culpability or fault of the actor. Henderson, 80 Wn. App. at 605. Under the second factor, the court considers three factors: (1) the party's bad faith, (2) whether the party had a duty to preserve the evidence, and (3) whether the party knew that the evidence was important to the pending litigation. Henderson, 80 Wn. App. at 609-10. Under Washington law, there is no general duty to preserve evidence. Cook v. Tarbert Logging, Inc., 190 Wn. App. 448, 469-70, 360 P.3d 855 (2015). A party may, however, have a duty to preserve evidence "on the eve of litigation." Homeworks Const., Inc. v. Wells, 133 Wn. App. 892, 901, 138 P.3d 654 (2006).

Under the first Henderson factor, the destroyed tort-claim records may have contained potentially relevant evidence. The trial court's September 2015 sanctions order found that the destruction may have prevented Camicia from proving whether the City had "prior notice of bicyclists being injured by bollards or other obstruction hazards."[10] Under the second Henderson factor (the culpability or fault of the destructing party), however, the record does not support a finding that the City destroyed the evidence in bad faith, knew that the evidence was important to the pending litigation, or had a duty to preserve the evidence. The City Clerk's declaration states that she followed the Secretary of State's Local Government Common Record

---

[10] CP at 1348.

Retention Schedule "GS50-01-10 Rev. 1" in destroying the claims after six years. Here, it is not clear that spoliation occurred.

But any error by the trial court was harmless. While the September 2015, sanctions order included a statement that the "court will favorably consider a spoliation of evidence jury instruction relating to the destroyed claims, should one be offered," the trial court did not base its decision to fine Cooley and the City on spoliation. Instead, the trial court's imposition of the $10,000 fine was based on the following conclusion:

> The defendant[,] City[,] and its defense counsel willfully violated the discovery rules by not conducting a reasonable search for its records; by not seeking a protective order if they wished to narrow the scope of discovery; by not disclosing the City's records of complaints; by falsely representing to Plaintiff "there have never been any bicycle vs. bollard accidents to the City's institutional knowledge'"; and by not supplementing its discovery responses with correct responses when it knew the response was incorrect when made."[11]

The trial court's conclusion is supported by its findings of fact and was not an abuse of discretion.

## IV

Cooley's third issue asserts that the trial court abused its discretion when it sanctioned Cooley because Cooley's responses to Camicia's discovery requests were objectively reasonable and in good faith.[12] Cooley makes five brief arguments in support. We disagree and address each argument in turn.

## A

Cooley argues first that his responses to Camicia's 2007 interrogatories were not misleading because he timely objected to what was objectionable and provided

---

[11] CP at 1350.
[12] Br. of Appellant at 33.

responses to the remainder. The trial court, however, found in its September 2015 sanctions order that Cooley's responses to Camicia's 2007 interrogatories were false, misleading, and evasive. The court's unchallenged findings are verities on appeal. In re Disciplinary Proceeding Against Osborne, ___Wn.2d___, 386 P.3d 288 (Wash. 2016).

In support of this finding, the trial court included several examples. First, in response to Camicia's Interrogatory 14, seeking information whether the City knew of any bicycle accidents involving bollards, the City answered that there "have never been any bicycle vs. bollard accidents to the City's *institutional* knowledge." The trial court found that the qualification of "institutional knowledge" was designed to "insulate the City from making full disclosure."[13] Second, Interrogatory 15 sought information relating to incidents "in any sidewalk, path or public right-of-way in the City of Mercer Island, either before or after this incident." Cooley, however, rephrased the question to change the meaning by inserting "Mercer Island right-of-way." He then argued that since the 2005 bike-bollard accident occurred in the WSDOT right-of-way, there was no need for the City to disclose. As the trial court explained, "The Court's experience with defense counsel has demonstrated that he is extremely well-spoken and talented with words. The court can only assume this re-phrase was intentional."[14] Finally, the court noted that Cooley's insistence that the accident records maintained by the City's Fire Department could not be disclosed due to state and federal medical-privacy laws was misleading when Camicia never asked for medical records.

---

[13] CP at 1349.
[14] CP at 1349.

-16-

The trial court's conclusion that the initial discovery responses were false, evasive, and misleading is supported by its findings of fact and was not an abuse of discretion.

B

Cooley argues second that it was unreasonable of the trial court to assert that he had a duty to "somehow seek out records to which he had no access," and that he was "not responsible for discovering what five separate City departments actually possessed."

"[CR 33(a) and CR 34(b)] are clear that a party must fully answer all interrogatories and all requests for production, unless a specific and clear objection is made." Fison, 122 Wn.2d at 353-54. As explained in Magana, barring either an agreement to a limited search, or disclosure that the search was limited, "A corporation must search all of its departments, not just its legal department, when a party requests information about other claims during discovery." Magana, 167 Wn.2d at 585-587. The City and Cooley unilaterally limited their search to the police department without either disclosing the limited search, seeking agreement from Camicia to a limited search, or seeking a protective order against what Cooley apparently believed was an overbroad request.

As the trial court's unchallenged findings explained,

City officials have known since before [Camicia's] accident that records of bicycle accidents, (including bike-bollard collisions) are kept by its Fire Department. Neither the City nor Mr. Cooley searched for records of other bicycle accidents responsive to [Camicia's] discovery requests in the City's Fire Department. Cooley strategically ignored looking at Fire Department records. Nor was a complete review made of the Police

-17-

Department, City Clerk's or City Attorney's files, or records where they knew or should have known that responsive information might be located.

After [Camicia's] first discovery requests were propounded, the City destroyed claims and complaints that were potentially responsive to [Camicia's] discovery requests, causing such records preceding [Camicia's] accident to be lost. During the course of litigating the discovery issues in May, 2015, it was disclosed that the City had not searched its "claims for damages" forms for records responsive to the discovery requests. When ordered to do so, it was revealed that all claims for damages forms and records relating to claims for damages generated before [Camicia's] accident had been destroyed. [15]

The trial court's conclusion that Cooley violated the discovery rules by not conducting a reasonable search for records is supported by its findings of fact and was not an abuse of discretion.

C

Cooley argues third that "it was reasonable for the City to resist [Camicia's] overly broad discovery under the relevancy standard applicable to prior accidents evidence."

CR 26(b)(1) governs the scope and limits of discovery. Information that will be inadmissible at trial is discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence. The standard of relevance for purposes of discovery is much broader than the standard required under the evidence rules for admissibility at trial. Beltran v. State, Department of Social and Health Services, 98 Wn. App. 245, 255, 989 P.2d 604 (1999) (citing Barfield v. City of Seattle, 100 Wn.2d 878, 886, 676 P.2d 438 (1984)). "CR 26 is to be liberally construed 'to eliminate the hide and seek trial practices encouraged by earlier procedures.'" Cook v. King County, 9 Wn. App. 50, 51,

---

[15] CP at 1343-44.

510 P.2d 659 (1973) (quoting McGugart v. Brumback, 77 Wn.2d 441, 444, 463 P.2d 140 (1969)).

While it is true that evidence of a previous similar accident is generally inadmissible to show a general lack of care or negligence, see, e.g., Breimon v. General Motors Corp., 8 Wn. App. 747, 754, 509 P.2d 398 (1973), this does not mean that Camicia's discovery requests were not reasonably calculated to lead to the discovery of admissible evidence. For example, Camicia's requests could have led to discovery of evidence of the City's notice of the danger. As the court explained that the "City's destruction of all pre-incident records of claims and complaints about bicycle accidents . . . may have prevented [Camicia] from proving whether [the City] had prior notice of bicyclists being injured on bollard or other obstruction hazards." Construing CR 26(b)(1) liberally, we agree with the trial court that Camicia's October 2007 discovery requests were reasonably calculated to lead to admissible evidence.

Moreover, the City did not object to the relevancy of the information sought by Camicia. In response to Interrogatory 14, seeking information on prior investigations of accidents, the City objected that the request was "Compound. Vague as to time. Overly broad as to location." Similarly, in response to Interrogatory 15, seeking notices, reports, complaints, or claims about safety concerns, the City objected that the request was "Compound. Vague as to what is meant by "notice" or "other communications" and "other obstructions or defects." As the trial court explained,

> Although the City noted broad objections, it went on to answer the questions. The City's responses did not indicate that it was withholding any information or documents responsive to [Camicia's] discovery requests. A reader would reasonably infer that the City had substantially answered the interrogatories in questions.

-19-

The City did not seek a protective order to limit or eliminate its obligation to respond fully to [Camicia's] discovery requests.[16]

Again, the trial court's conclusion that Cooley violated the discovery rules is supported by its findings of fact and was not an abuse of discretion.

D

Cooley argues fourth that the trial court failed to consider lesser sanctions as required by Burnet v. Spokane Ambulance, 131 Wn.2d 484, 495, 933 P.2d 1036 (1997). This argument fails for two reasons.

First, a trial court has broad discretion as to the choice of sanctions for violation of a discovery order. Burnet, 131 Wn.2d at 495. When a trial court sanctions a party with one of the harsher remedies allowable under CR 37(b), such as dismissal, default, or exclusion of testimony, the trial court must explicitly consider the Burnet factors on the record: whether "a lesser sanction would probably suffice, whether the violation at issue was willful or deliberate, and whether the violation substantially prejudiced the opponent's ability to prepare for trial." Jones v. City of Seattle, 179 Wn.2d 322, 338, 314 P.3d 380 (2013) (citing Burnet, 131 Wn.2d at 494)). But where, as here, the only issue is the imposition of a monetary sanction, the trial court is not obligated to apply the Burnet test in its consideration of sanctions. Mayer v. Sto Industries, Inc., 156 Wn.2d 677, 689-90, 132 P.3d 115 (2006).

Cooley argues that because the trial court imposed sanctions over and above the monetary sanction, including the admission of otherwise inadmissible accident reports and the potential for a spoliation instruction, consideration of the Burnet factors was

---

[16] CP at 1343.

required. This argument necessarily fails because the additional sanctions do not rise to the "harsher" sanctions under CR 37(b) including default, dismissal, or exclusion of witnesses or evidence. Mayer, 156 Wn.2d at 690. And, moreover, because the underlying case was dismissed without trial, the only relevant sanction appealed by Cooley is the monetary sanction.

Second, while not necessary, the trial court did apply the Burnet test. The trial court considered whether a lesser sanction, including a monetary penalty, would suffice and concluded that it would. When considering default, the court concluded that "the imposition of all the lesser sanctions . . . will adequately deter, punish, compensate, and educat[e]."[17] The court considered whether the violation was willful and concluded that it was. The trial court concluded that Cooley and the City willfully violated the discovery rules by (1) not conducting a reasonable search of the City's records, (2) not seeking a protective order, (3) not disclosing the City's record of complaints, (4) falsely telling Camicia that there "have never been any bicycle vs. bollard accidents to the City's institutional knowledge," and (5) not supplementing its discovery requests with correct responses.[18] The court also considered whether the violation substantially prejudiced Camicia's ability to prepare for trial and concluded that it did. The court concluded that "the continuance alone is an insufficient remedy and has not adequately addressed the prejudice to the plaintiff or the judicial system."[19] In sum, the court considered the Burnet factors before sanctioning the City and Cooley.

---

[17] CP at 1351.
[18] CP at 1350.
[19] CP at 1351.

E

Cooley argues finally that the trial court did not explain why it sanctioned the City and Cooley jointly and severally. Cooley contends that the court should have only sanctioned the City.

"A spirit of cooperation and forthrightness during the discovery process is mandatory for the efficient functioning of modern trials." Johnson v. Mermis, 91 Wn. App. 127, 132-33, 955 P.2d 826 (1998). Rule 37 authorizes sanctions to be imposed on "*a party or its attorney* for (1) failure to comply with a discovery order or (2) failure to respond to a discovery request." Johnson, 91 Wn. App. at 133 (emphasis added). A trial court exercises broad discretion in imposing discovery sanctions, and its determination will not be disturbed on appeal absent a clear abuse of discretion. Mayer, 156 Wn.2d at 677.

Here, the trial court's sanctions order explains in detail why the court imposed sanctions on the City and its counsel. As explained above, the trial court's sanction rested on its conclusion that "City and its defense counsel willfully violated the discovery rules by not conducting a reasonable search for its records; by not seeking a protective order if they wished to narrow the scope of discovery; by not disclosing the City's records of complaints; by falsely representing to [Camicia] '*there have never been any bicycle vs. bollard accidents to the City's institutional knowledge'*; and by not supplementing its discovery responses with correct responses when it knew the response was incorrect when made."[20] Both the City's and its counsel's actions were

---

[20] Sanctions order at 11 (CP at 1350).

sanctionable under these facts. The trial court did not abuse its discretion in imposing the monetary penalty on both the City and Cooley.

V

Camicia argues that this court should file a grievance against Cooley and his firm with the Washington State Bar Association, as encouraged by In re Disciplinary Proceeding Against McGrath, 174 Wn.2d 813, 818, 280 P.3d 1091 (2012). Camicia's request goes too far. Attorney McGrath's discovery violations were far beyond what the trial court found here. We decline to file a bar grievance against Cooley.

Camicia argues also that Cooley is not an aggrieved party and therefore the appeal is frivolous. We disagree. "An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected." A lawyer who is sanctioned becomes a party to an action and "thus may appeal as an aggrieved party." Breda v. B.P.O. Elks Lake City 1800 SO-620, 120 Wn. App. 351, 353, 90 P.3d 1079 (2004); Ferguson Firm, PLLC v. Teller & Assocs., PLLC, 178 Wn. App. 622, 628-29, 316 P.3d 509 (2013). Because the City and Cooley were jointly and severally liable for the $10,000 obligation imposed by the trial court, Cooley is an aggrieved party.

## CONCLUSION

The trial court did not abuse its discretion. We affirm.

Mann, J.

WE CONCUR:

Schindler, J.

Cox, J.

-23-