

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOV 2 9 2018
DATE

_Fairhurst, C.J._
CHIEF JUSTICE

This opinion was filed for record

at __8:00am__ on __Nov 29, 2018__

__Susan L. Carlson__
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Disciplinary Proceeding Against | ) ) ) | No. 201,706-1 |
| | ) | EN BANC |
| RUSSELL JAMES JENSEN, JR., | ) ) | |
| | ) | Filed     NOV 2 9 2018 |
| an Attorney at Law. | ) | |
| | ) | |

FAIRHURST, C.J.—This attorney disciplinary action arises out of Russell James Jensen Jr.'s conduct during his own divorce proceedings. Jensen repeatedly violated court orders, engaged in frivolous litigation, made misrepresentations to the court, and made threatening and harassing contacts with parties that he knew to be represented by counsel. He also refuses to accept responsibility for his misconduct. He acknowledges that the protracted litigation has harmed his wife but seems unable to recognize that his own actions were the source of her injuries. Nor did he see fit to show up to his own disciplinary hearing.

Following testimony from his wife, her brother, and her attorney, the Washington State Bar Association (WSBA) hearing officer found that Jensen violated the Rules of Professional Conduct (RPC) and recommended disbarment.

The WSBA Disciplinary Board (Board) unanimously adopted the hearing officer's recommendation. We adopt the Board's recommendation and disbar Jensen from the practice of law.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual background

Jensen was admitted to practice law in Washington on October 27, 2008. On August 15, 2013, Jensen's wife, Therese Jensen,[1] filed for dissolution of marriage in Snohomish County Superior Court. Therese and Jensen owned their family home in Mukilteo. Therese has severe multiple sclerosis and was dependent on Jensen for care. After filing for dissolution, Therese moved to Nebraska.

#### 1. *The Mukilteo house*

On December 24, 2013, the superior court entered an order granting Therese control and authority to list the Mukilteo house for sale. Therese contacted listing agent Leanne Finlay to help sell the Mukilteo house. In January 2014, Jensen placed a "for sale by owner" sign on the front lawn. He refused Finlay's request to remove his sign. When workers later came to install Finlay's "for sale" sign, Jensen became irate and tore the post out of the ground. Jensen also placed a Post-it Note on the front door of the Mukilteo house, stating, "Buyer Beware Title is unlikely to be

---

[1] We use Therese Jensen's first name in this opinion for clarity and intend no disrespect.

cleared for A sale – call [Jensen's phone number]." Ex. A-208; Findings of Fact, Conclusions of Law and Hr'g Officer's Recommendation (FFCL) 22. On January 22, 2014, Jensen sent an e-mail to Finlay and to Therese's attorney telling them that they could not sell the home.

On February 10, 2014, the superior court found that Jensen had "obstruct[ed] the listing and sale of the Mukilteo residence," and it ordered Jensen to "fully cooperate with the sale of the Mukilteo residence up to [the] point of signing closing document." Ex. A-220; FFCL 27. At the hearing, Jensen agreed to cooperate. On February 11, 2014, Jensen filed a motion for revision in which he falsely stated that he had "made no efforts of any kind" to obstruct Therese's efforts to list and show the home. Ex. A-222; FFCL 28-29. On February 12, 2014, Finlay declared to the superior court that Jensen's "for sale by owner" sign was still on the lawn.

Therese received a written offer to buy the Mukilteo house. On February 14, 2014, Jensen phoned the buyer's agent. Jensen told the agent that he intended to block the sale by refusing to sign the sale documents. Jensen then offered to sign the documents if the buyer agreed to pay Jensen an extra $50,000 outside of the sale and escrow process. Jensen instructed the agent not to tell anyone about his offer. The agent declined his offer.

On February 20, 2014, the superior court denied Jensen's motion for revision. On March 7, 2014, the superior court entered an order (1) approving the pending

sale of the house, (2) ordering Jensen to "execute any and all necessary documents to effectuate the closing of the sale," (3) authorizing Therese to sell the home unilaterally if Jensen refused to sign documents, and (4) ordering Jensen to "remove himself and his personal belongings" from the house. Ex. A-235; FFCL 38. Jensen filed another motion for revision. The superior court denied it and ordered Jensen to vacate the premises. Jensen vacated the house.

Jensen filed an emergency request with the Court of Appeals to stay the superior court's order. Jensen and Therese filed multiple briefs; in addition to oral argument, there were two emergency hearings. On April 17, 2014, the Court of Appeals terminated review, finding that Jensen had consented to the sale and there was no basis for discretionary review, and awarded Therese attorney fees. Jensen still refused to sign the documents, and the buyer backed out of the sale. The stress of these events exacerbated Therese's multiple sclerosis symptoms.

A second buyer made an offer on the house. On May 14, 2014, Jensen signed an agreement under CR 2A awarding the Mukilteo house to Therese and agreeing to transfer real property to her without further litigation, delay, appeal, or clouding of title. Jensen then conveyed the house to Therese by quitclaim deed but listed his name incorrectly on the deed. Jensen refused the title company's request to correct the deed and threatened to sue the title company. On June 30, 2014, the superior court ordered Jensen to execute the closing documents by close of the business day.

4

Jensen did not comply. On July 9, 2014, the superior court sanctioned Jensen for failing to cooperate in the closing and for creating further litigation and delay.

Therese eventually convinced a second title company to close the sale with the existing quitclaim deed, but only after agreeing to indemnify it. Jensen then wrote letters to the buyers and their mortgage company, claiming that the sale was void and that he might still own the house.

On September 23, 2014, the superior court entered a decree of dissolution. Jensen then filed an appeal, asking the Court of Appeals to overturn all superior court orders that led to the sale of the house, including the final decree. On December 1, 2014, the superior court entered a judgment in the amount of $19,290.55 against Jensen for attorney fees and debts owed to Therese. As of the disciplinary hearing, Jensen had not paid the judgment.

On July 10, 2015, following a motion by Therese, the superior court entered an order finding that Jensen had engaged in vexatious litigation against Therese and requiring that Jensen post a $10,000 bond before filing further pleadings. Even at oral argument, Jensen continued to argue that the superior court lacked authority to compel the sale.

2. *The Savage property*

Prior to their marriage dissolution, the Jensens also jointly owned stock in Apollo Land Company, whose sole asset was a parcel of real property in Savage,

Minnesota. After vacating the Mukilteo house in spring 2014, Jensen moved to Arden Hills, Minnesota. Jensen changed the mailing addresses filed with the state of Minnesota regarding the Savage property so that real property tax notices for the Savage property—including delinquency notices—were sent to his Arden Hills home.

On May 9, 2014, the Savage property was sold to the state of Minnesota to pay delinquent real property taxes. On May 14, 2014, the Jensens signed an agreement under CR 2A, *see supra at* section I.A.1, that awarded the Apollo stock to Jensen.

On August 20, 2014, Jensen registered the newly formed M.J. Scott Company with the Minnesota secretary of state, listing himself as its registered agent. On September 8, 2014, Jensen, through the M.J. Scott Company, repurchased the Savage property for $500 or less.

On September 19, 2014, Jensen filed a signed declaration with the superior court, stating (1) that Therese had lost the Savage property by failing to pay property taxes, (2) that this had rendered the Apollo stock awarded to him under the CR 2A agreement worthless, and (3) that he was entitled to $150,000 compensation for that loss. Jensen did not disclose that the delinquency notices were sent to his home address (not Therese's) or that he had repurchased the Savage property for under $500. Nor did Jensen disclose these facts at a September 23, 2014 hearing on the

motion to which his declaration related. Instead, it was Therese's attorney who informed the superior court of these facts after having discovered them herself. The superior court denied Jensen compensation for the alleged loss of the Savage property.

3. *Communication with represented parties (Therese and James Brown)*

The Jensens also owned other real property in Minnesota, some of it jointly with Therese's brother, James Brown. Jensen, Therese, and Brown engaged in litigation in Minnesota related to these properties. Therese and Brown were represented in Minnesota by attorneys Stanford Hill and Daniel Olson; Therese was represented in Washington by attorney Sabrina Layman.

Jensen, while acting pro se, repeatedly wrote letters and e-mails to Therese and Brown. These communications included threats—for example, that Brown would go to jail and that if Jensen were disbarred, Therese's alimony would be lowered. Jensen knew that Therese and Brown were represented because he copied their attorneys on these communications. Jensen also harassed the attorneys, calling Olson a "shill" and Layman "dirtball scum." Ex. A-508; FFCL 92. Layman, Hill, and Olson all asked Jensen to stop communicating with their clients, and Brown asked Jensen to stop communicating directly with him.

4. *Further litigation*

Jensen continued to litigate in Minnesota. On April 28, 2015, Minnesota's Anoka County District Court granted Therese and Brown's motion for sanctions against Jensen. The court found that Jensen had made misrepresentations of fact in his pleadings and acted in a "vexatious and oppressive manner." Ex. A-601; FFCL 98. On June 2, 2015, it imposed $20,747.50 in sanctions against Jensen.

On June 16, 2015, the district court ordered Jensen to stop contacting Therese and Brown. On June 21, 2015, the district court found that Jensen had repeatedly brought motions and pleadings in which he misrepresented facts and which had little or no basis in law.

5. *Prior discipline*

Jensen has been previously disciplined in Minnesota, where he was admitted to practice law in 1985, for misconduct similar to that at issue in this case. In 1991, the Minnesota Supreme Court reprimanded Jensen for mishandling money held in trust, disobeying a court order to return funds, violating procedural rules of appeal, disobeying Court of Appeals orders, making ex parte communications with Court of Appeals judges, and incompetently representing a client.

In 1995, the Minnesota Supreme Court admonished Jensen for abusive behavior toward someone who had filed an ethics complaint against him. In 1996, the Minnesota Supreme Court suspended Jensen's law license indefinitely for

asserting frivolous claims, making false statements to a tribunal, and disobeying obligations under that tribunal's rules, and for conduct involving misrepresentations and conduct prejudicial to the administration of justice. In 1999, Jensen was reinstated to practice law in Minnesota.

B. Procedural history

Based on the above conduct, the WSBA charged Jensen with six counts of violating the RPCs. Jensen filed an answer, and the parties engaged in informal discovery under ELC 10.11. Acting under ELC 10.11(d), the hearing officer denied Jensen's request for additional formal discovery, including, inter alia, requests to serve interrogatories on nonparties and requests to produce privileged information. Jensen then informed the WSBA, "I will not attend the hearing," and, "I will save my arguing for the appeal to the Supreme Court." Clerk's Papers (CP) at 034 (e-mail from Jensen to Erica Temple, WSBA Disciplinary Counsel (June 22, 2016, 2:45 PM PDT)).

Jensen did not attend his hearing. The hearing officer found that the WSBA proved all six counts by a preponderance of the evidence. Applying the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) (ABA *Standards*), the hearing officer noted that the presumptive sanction was disbarment. He found that no mitigating factors applied and that eight aggravating factors applied: (1) prior disciplinary offenses, (2) dishonest or selfish motive, (3) a

pattern of misconduct, (4) multiple offenses, (5) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, (6) refusal to acknowledge wrongful nature of conduct, (7) vulnerability of victim, and (8) substantial experience in the practice of law. The hearing officer recommended disbarment and further recommended that "[a]s a condition of reinstatement from any suspension or disbarment, [Jensen] shall pay any and all judgements owed by him to Therese Jensen, James Brown, and/or the Therese Brown Jensen Trust." FFCL 138. The Board unanimously adopted the recommendation.

## II. ANALYSIS

A. Jensen's conduct, as established in the unchallenged findings of fact, supports the hearing officer's conclusion that Jensen violated the RPCs

### 1. *Standard of review*

"'Unchallenged findings of fact made by the hearing officer and affirmed by the Disciplinary Board will be accepted as verities on appeal.'" *In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 461, 120 P.3d 550 (2005) (quoting *In re Disciplinary Proceeding Against Carmick*, 146 Wn.2d 582, 594, 48 P.3d 311 (2002)).

We uphold a "hearing officer's ultimate conclusion that misconduct occurred . . . if it is supported by substantial evidence in the record that the lower court could

reasonably have found would meet the clear preponderance standard." *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 330, 157 P.3d 859 (2007). Evidence is substantial if it is "sufficient 'to persuade a fair-minded, rational person of the truth of a declared premise.'" *Id.* (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Against Poole*, 156 Wn.2d 196, 209 n.2, 125 P.3d 954 (2006)). The clear preponderance standard "requires more proof than a simple preponderance but less than beyond a reasonable doubt." *In re Disciplinary Proceeding Against Abele*, 184 Wn.2d 1, 13, 358 P.3d 371 (2015). We review challenged conclusions of law de novo. *Id.*

### 2. *Count 1*

The hearing officer concluded that "[b]y failing to comply with court orders regarding the sale of the Mukilteo home and obstructing the sale, [Jensen] violated RPC 8.4(d) and RPC 8.4(j)." FFCL 119. Under RPC 8.4(d), it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Under RPC 8.4(j), it is professional misconduct for a lawyer to "willfully disobey or violate a court order directing him . . . to do or cease doing an act which he . . . ought in good faith to do or forbear."

There is substantial evidence in the record for the hearing officer to reasonably have found by a clear preponderance of the evidence that Jensen violated RPC 8.4(d) and (j). First, the record supports a finding that Jensen violated the December 24,

11

2013 order granting Therese, as part of their dissolution proceedings, sole authority to list the Mukilteo house for sale. Jensen placed his own "for sale by owner" sign on the property, refused to remove his sign, tore the "for sale" sign of Therese's listing agent out of the ground, placed a note on the front door warning potential buyers that the property was unlikely to have clear title, and e-mailed Therese's attorney and her listing agent, telling them that they could not sell the house.

Second, the record supports a finding that Jensen violated the February 10, 2014 court order directing Jensen to "fully cooperate" with the sale "up to [the] point of signing closing document." Ex. A-220; FFCL 27. He continued to leave his "for sale by owner" sign on the lawn. He also told the first prospective buyer's agent that he intended to block the sale by refusing to sign the sale documents, unless the buyer agreed to secretly pay Jensen $50,000 outside of the sale and escrow process.

Third, the record supports a finding that Jensen violated the February 20, 2014 court order directing Jensen to "execute any and all necessary documents to effectuate the closing of the sale." FFCL 38; Ex. A-235. He continued to refuse to sign sale documents, causing the first buyer to back out of the sale.

Fourth, the record supports a finding that Jensen violated the June 30, 2014 order directing Jensen to sign the sale documents by the close of the business day. Jensen never signed the sale documents. After Therese convinced a second title

company to close without Jensen's signature, he wrote letters to the buyers and their mortgage company claiming that the sale was void.

Jensen argues that because these were interlocutory and not final orders, he was not legally obligated to comply with them. Jensen cites no authority and offers no argument to support this claim. We have held that when a party cites no authority, we "'may assume that counsel, after diligent search, has found none.'" *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). We have also held that "[t]he Supreme Court will not consider an assignment of error where there is no argument in the brief" to support it, "unless it is apparent without further research that the assignments of error presented are well taken." *DeHeer*, 60 Wn.2d at 126; *see also In re Disciplinary Proceeding Against Cottingham*, 191 Wn.2d 450, 465 n.1, 423 P.3d 818 (2018) (applying *Young* and *DeHeer* in the attorney discipline context). As the WSBA suggests, the notion that interlocutory court orders have no legal effect is a "remarkable proposition." Answering Br. of Office of Disciplinary Counsel of WSBA at 28. Because it is not immediately apparent that the argument is well taken, we disregard it. For the same reason, we also disregard Jensen's argument that RPC 8.4(d) (prohibiting conduct "prejudicial to the administration of justice") is overbroad and "does not bear any review." Opening Br. of Appellant at 33 n.62.

### 3. *Count 2*

The hearing officer concluded that "[b]y repeatedly filing frivolous and/or vexatious motions and appeals relating to the sale of the Mukilteo home, [Jensen] violated RPC 3.1 and RPC 8.4(d)." FFCL 120. RPC 3.1 prohibits attorneys from asserting claims or issues in litigation "unless there is a basis in law and fact . . . that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." RPC 8.4(d) prohibits conduct "prejudicial to the administration of justice."

There is substantial evidence in the record for the hearing officer to reasonably have found by a clear preponderance of the evidence that Jensen's litigation strategy violated RPC 3.1 and 8.4(d). At several points, Jensen agreed to the sale of the Mukilteo house. He failed to object to Therese's initial December 2013 motion seeking "'control and authority'" to list their real property assets for sale. Ex. A-253 at 6. He wrote to Therese and her attorney in January 2014 that she could "go ahead and sell the properties" and that he would not "get in the way." Ex. A-207. He also represented to the superior court that he would "fully cooperate with the sale." Ex. A-220. In this same period, he filed multiple motions with the superior court and an appeal in the Court of Appeals, opposing the Mukilteo house sale. He has followed a similar strategy with the Anoka County District Court. Both courts eventually sanctioned Jensen for vexatious litigation.

14

Jensen argues that his actions were justified by a good faith argument that under RCW 26.16.030 and RCW 6.13.060, courts lack the authority to give one spouse the right to unilaterally sell the community-owned family home. His continuing failure to acknowledge directly on-point contrary authorities, even after courts have brought them to his attention, undercuts this argument. Regardless, the hearing officer could reasonably have found that Jensen's repeated agreements to sell the properties rendered his simultaneous challenges to their sale frivolous.

### 4. *Count 3*

The hearing officer concluded that "[b]y requesting the $50,000 pay-off from the first purchasers, [Jensen] violated RPC 8.4(c) and RPC 8.4(d)." FFCL 121. RPC 8.4(c) prohibits lawyers from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." RPC 8.4(d) prohibits conduct "prejudicial to the administration of justice." Based on the testimonial and documentary evidence that Jensen demanded an illegal secret payoff, the hearing officer could reasonably conclude that Jensen engaged in dishonesty, fraud, deceit or misrepresentation and that his actions were prejudicial to the administration of justice. Jensen's argument that he has "unlimited right to sell [his] property at public or private sale for any price [he] want[s], without any restrictions," is without merit. Opening Br. of Appellant at 41.

5. *Counts 4 and 5*

The hearing officer concluded that by making false statements to the court "about not obstructing the sale of the Mukilteo home" (count 4) and "about the sale of the Savage property" (count 5), Jensen "violated RPC 3.3(a)(1) and RPC 8.4(c)." FFCL 122-123. RPC 3.3(a)(1) prohibits lawyers from knowingly making or failing to correct false statements of material fact or law to a tribunal. RPC 8.4(c) prohibits lawyers from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation."

There is substantial evidence in the record for the hearing officer to reasonably have found by a clear preponderance of the evidence that Jensen made false statements to both the superior court and the district court. The superior court entered an order stating that Jensen "agreed with [the] court's request" that he not obstruct the Mukilteo house sale, Ex. A-220, and Jensen stated in a subsequent motion that he had "made no efforts of any kind" to obstruct the sale, Ex. A-222. Jensen argues that these were statements of opinion, not fact, and thus do not fall under RPC 3.3(a)(1) and 8.4(c). But there is substantial evidence in the record to support the hearing officer's finding that Jensen made false allegations of material fact to the superior court. Prior to these statements, Jensen had placed his own "for sale by owner" sign on the lawn, torn the listing agent's sign out of the ground, and placed a "Buyer Beware" Post-it Note on the door. After making these statements, Jensen

16

left his sign on the lawn; called the first buyer's agent, threatening to block the sale; and consistently refused to sign closing documents.

With respect to the Anoka County District Court, the record indicates that Jensen had already repurchased the Savage property for under $500 when he declared to the court that he was entitled to its $150,000 value. Jensen also declared to the court that Therese lost the Savage property by failing to pay its taxes. But the evidence that the Savage property tax delinquency notices were sent to Jensen—rather than Therese—supports the hearing officer's finding that Jensen's statement was knowingly false.

6. *Count 6*

The hearing officer concluded that "[b]y contacting [Therese] and [Brown] directly about the subject of litigation, even though he knew they were represented by counsel, [Jensen] violated RPC 4.2." FFCL 124. Under RPC 4.2, "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter," unless either the other lawyer has consented or the lawyer is authorized to do so by law or a court order. Although parties may ordinarily communicate directly with each other, RPC 4.2 cmt. 4, we have held that RPC 4.2 applies to lawyers acting pro se. *In re Disciplinary Proceeding Against Haley*, 156 Wn.2d 324, 338, 126 P.3d 1262 (2006).

Jensen admits violating RPC 4.2 but argues that his doing so was justified by "extenuating circumstances." Opening Br. of Appellant at 46. As extenuating circumstances, he recites a series of factual allegations not contained in the record, blaming Brown for driving up litigation costs in the dissolution proceedings. Jensen here challenges both a finding of fact (by arguing that the facts are other than the WSBA asserts them to be) and a conclusion of law (by arguing that it is not professional misconduct to violate RPC 4.2 if there are extenuating circumstances).

We pay no heed to Jensen's factual allegations. "An attorney challenging factual findings on appeal must do more than 'argu[e] his version of the facts while ignoring testimony by other witnesses that supports each finding.'" *In re Disciplinary Proceeding Against Kronenberg*, 155 Wn.2d 184, 191, 117 P.3d 1134 (2005) (alteration in original) (quoting *In re Disciplinary Proceeding Against Kagele*, 149 Wn.2d 793, 814, 72 P.3d 1067 (2003)). He or she must "'present argument to the court why specific findings of fact are not supported by the evidence and . . . cite to the record to support that argument.'" *Id.* (alteration in original) (internal quotation marks omitted) (quoting *In re Disciplinary Proceeding Against Haskell*, 136 Wn.2d 300, 311, 962 P.2d 813 (1998)). Jensen does not challenge any specific findings of fact, and he does not cite to the record to support his own factual claims. If Jensen wished to argue his version of the facts, the appropriate time to do so was at his disciplinary hearing.

18

Moreover, Jensen's legal argument regarding RPC 4.2 is incorrect. To avoid "reasonably certain injury," a lawyer may "seek a court order in exceptional circumstances to authorize a communication that would otherwise be prohibited by [RPC 4.2]." RPC 4.2 cmt. 6. If Jensen believed it was necessary to contact Therese and Brown directly to avoid further depleting the Jensens' marital property, the proper course of action under the RPCs was to seek a court order authorizing him to do so.

There is substantial evidence in the record for the hearing officer to reasonably have found by a clear preponderance of the evidence that Jensen, acting pro se, communicated with Therese and Brown about the Minnesota property litigation. And the fact that he copied their attorneys on these communications shows that he knew they were represented by counsel. The record does not show that the other lawyers consented to the communications or that court orders authorized the communications. To the contrary, Therese's and Brown's attorneys, and Brown himself, asked Jensen to stop.

B. Jensen's violations of the RPCs, together with his prior disciplinary record, support the Board's recommendation of disbarment

We use a three pronged analysis to review whether the Board, using the ABA *Standards*, properly determined lawyer sanctions. *Marshall*, 160 Wn.2d at 342. First, we determine whether the Board properly determined the presumptive sanction. *Id.*

(citing *In re Disciplinary Proceeding Against Cohen*, 150 Wn.2d 744, 758, 82 P.3d 224 (2004)). Second, we consider aggravating and mitigating circumstances. *Id.* Third, we determine whether the degree of unanimity among Board members and the proportionality of the sanction justify departure from the Board's recommendation. *Id.* (citing *In re Disciplinary Proceeding Against Kuvara*, 149 Wn.2d 237, 259, 66 P.3d 1057 (2003)). "This court will uphold a sanction recommended by a unanimous Board 'in the absence of a clear reason for departure.'" *In re Disciplinary Proceeding Against Behrman*, 165 Wn.2d 414, 422, 197 P.3d 1177 (2008) (quoting *In re Disciplinary Proceeding Against Whitt*, 149 Wn.2d 707, 717, 72 P.3d 173 (2003)).

In this case the Board adopted the hearing officer's analysis, and the hearing officer, applying ABA *Standards* stds. 8.1 and 6.1-6.3, properly determined the presumptive sanctions. Under ABA *Standards* std. 8.1, "[d]isbarment is generally appropriate when a lawyer: . . . has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." Jensen has been suspended before in Minnesota for asserting frivolous claims, making false statements to a tribunal, and disobeying obligations under that tribunal's rules, and for conduct involving misrepresentations and conduct prejudicial to the administration of justice. Jensen engaged in similar conduct in this

case. Jensen's frivolous litigation caused Therese and Brown to incur hundreds of thousands of dollars in legal fees and also wasted court resources, and his misrepresentations to the public caused the first Mukilteo house buyer to back out of the sale. Although Jensen's previous suspension occurred two decades ago, "[t]his court . . . routinely considers similar misconduct dating back many years to determine whether prior disciplinary offenses serve as an aggravating factor." *In re Disciplinary Proceeding Against VanDerbeek*, 153 Wn.2d 64, 92, 101 P.3d 88 (2004).

Under ABA *Standards* std. 6.11, "[d]isbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement . . . or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." Jensen's repeated misrepresentations regarding the Mukilteo house adversely affected the marriage dissolution proceedings. And his misrepresentations and improper omissions to the superior court with respect to the Savage property could have caused that tribunal to erroneously award him $150,000 for a piece of land that he allowed to go into tax delinquency and then repurchased for under $500. *Cf. In re Disciplinary Proceeding Against Christopher*, 153 Wn.2d 669, 680, 105 P.3d 976 (2005) ("Christopher fully intended to perpetrate a fraudulent scheme [against the court]. Had she succeeded, the court might have relied on [her

21

misrepresentations] in awarding the prevailing party attorney fees. . . . [T]his caused serious injury to the profession and to the judicial system. We hold that standard 6.11 applies.").

Under ABA *Standards* std. 6.21, "[d]isbarment is generally appropriate when a lawyer knowingly violates a court order . . . with the intent to obtain a benefit for the lawyer . . . and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding." Jensen repeatedly violated superior court orders by interfering with the Mukilteo house sale. He did so to obtain a financial benefit for himself, even going so far as to demand a secret payoff. His efforts caused the first buyer to back out of the sale, thereby causing potentially serious injury to Therese.

While the hearing officer found that the presumptive sanction for communicating with represented parties (count 6) was suspension, *see* ABA *Standards* std. 6.32, he correctly noted our holding that when multiple ethical violations are found, "'the ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct.'" *In re Disciplinary Proceeding Against Petersen*, 120 Wn.2d 833, 854, 846 P.2d 1330 (1993) (quoting ABA *Standards* at 6). Thus, the hearing officer and the Board properly determined that Jensen's presumptive sanction is disbarment.

Under *Marshall*'s second prong, we consider aggravating and mitigating circumstances. The hearing officer properly found that eight aggravating factors apply in Jensen's case: (1) prior disciplinary offenses, (2) dishonest or selfish motive, (3) a pattern of misconduct, (4) multiple offenses, (5) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, (6) refusal to acknowledge wrongful nature of conduct, (7) vulnerability of victim, and (8) substantial experience in the practice of law. Jensen was disciplined multiple times in Minnesota for similar conduct. His repeated misrepresentations to the superior and district courts suggest a dishonest motive. Because lawyers "given notice of [their] hearing must attend the hearing" and failure to attend without good cause may itself be grounds for discipline, ELC 10.13(b), Jensen's willful failure to attend his hearing constitutes an intentional failure to comply with the disciplinary agency's rules and orders. Therese, whose already severe multiple sclerosis is (according to the uncontested factual record) aggravated by the stress of Jensen's misconduct, is an especially vulnerable victim. And Jensen, who was admitted to the Minnesota bar in 1985, has substantial experience in the practice of law. Despite this experience, Jensen maintains that he did nothing wrong and refuses to acknowledge his role in his wife's physical and financial suffering.

Jensen's briefs do not address either of the first two prongs. Instead, his argument appears to be that under the third prong, the presumptive sanctions are disproportionate enough when applied to his conduct to justify departure from the Board's recommendation. Under *Behrman*, Jensen must provide a clear reason for departure from the Board's unanimous recommendation. 165 Wn.2d at 422. He supports his disproportionality argument by briefly restating the reasons that he does not believe his actions constitute violations of the RPCs. Because we hold that Jensen did violate the RPCs, it follows that we reject his proposed reasons for departing from the Board's unanimous recommendation. Moreover, "[t]he attorney facing discipline bears the burden of bringing to the court's attention cases that demonstrate the disproportionality of the sanction imposed." *Cottingham*, 191 Wn.2d at 470. Because Jensen offers no analogous cases and provides no clear reason for departing from the Board's unanimous recommendation, he has failed to meet his burden of proving that the sanction is disproportionate. We therefore adopt the Board's proposed sanction of disbarment.

C. The disciplinary hearing did not violate Jensen's due process rights

Jensen argues for the first time on appeal that the disciplinary hearing violated his procedural due process rights. First, he alleges that the WSBA denied him access to the original copy of his bar file. Second, he argues that the hearing officer improperly denied discovery. Third, he argues that the hearing officer is so

24

underqualified that he was denied due process. Fourth, he argues that the disciplinary procedure violates due process because the Board "retain[s] the power to overrule the hearing officer." Opening Br. of Appellant at 7.

We need not address Jensen's due process claims because he cites no authority and offers no legal arguments to support them. *See Young*, 89 Wn.2d at 625; *DeHeer*, 60 Wn.2d at 126; *Cottingham*, 191 Wn.2d at 465 n.1. We will nevertheless briefly explain why each claim is without merit.

Jensen's first claim—that the WSBA denied him access to his bar file—is a factual allegation with no basis in the record.[2] The Board would not be permitted to consider his allegation. ELC 11.12(b) ("Evidence not presented to the hearing officer cannot be considered by the Board."); *see also* ELC 11.5(d). Because our factual record is limited to the record before the Board and the hearing officer, *see* ELC 12.5(b), Jensen cannot raise this claim for the first time here. The proper time for Jensen to raise this factual issue was at the hearing, which he willfully failed to attend.

Jensen's second due process claim is that the hearing officer improperly denied discovery. Discovery in disciplinary proceedings is mostly informal. *See*

---

[2] Instead the record contains a declaration from the WSBA counsel, stating that the WSBA provided Jensen with nonprivileged documents obtained during the course of its investigation and that the WSBA public records officer confirmed with the WSBA counsel that as of April 8, 2016, she had not received any requests from Jensen for information.

ELC 10.11(a). Other than requests for admissions, the parties must file motions to request formal discovery. ELC 10.11(b)-(c). ELC 10.11(d) grants the hearing officer "broad discretion" to limit discovery. *In re Disciplinary Proceeding Against Scannell*, 169 Wn.2d 723, 741-42, 239 P.3d 332 (2010) (holding that a hearing officer who "largely denied" an attorney's discovery requests did not violate due process).

The bar file shows that Jensen wrote to the hearing officer requesting to serve interrogatories and requests for production of documents on Therese's attorney Layman and to serve interrogatories and requests for production of documents on the WSBA. Layman is a nonparty. *See* ELC 10.1(b)(2). CR 33-34 allow interrogatories and requests for production to be served only on parties. CR 33(a), 34(a). Even if the hearing officer were to use his discretionary authority under ELC 10.11(c)-(d) to grant Jensen the right to serve interrogatories and requests for production under CR 33-34, Jensen could not serve them on Layman. In contrast, the WSBA is a party. But Jensen requested privileged information from the WSBA,[3] without any showing that he had substantial need and was unable without undue

---

[3] For example, Jensen requested production of notes from disciplinary counsel's internal communications, information related to any "consulting experts," confidential disciplinary information about any lawyers who might be called as witnesses, and "any notes of any attorney-client privileged or other confidential client information in [the WSBA's] possession relative to this case." CP at 016 (Interrogs. and Req. for Produc. of Docs. Directed to WSBA).

hardship to obtain their equivalent by other means. *See* CR 26(b)(4) (requiring litigants to make such a showing when requesting discovery of privileged information) *and* ELC 10.1(a) (stating that the superior court civil rules "serve as guidance" in disciplinary hearings). Thus, the hearing officer properly exercised his discretion in denying Jensen's requests for formal discovery.

Jensen's third due process claim, which attacks the hearing officer's qualifications and volunteer status, is also meritless. Jensen argues that hearing officers "do not even have to practice law." Opening Br. of Appellant at 28. This ignores the rigorous qualifications that ELC 2.5(b) requires of hearing officers, who must (1) be active members of the WSBA, (2) have been active or judicial members for at least seven years, (3) have no record of public discipline, and (4) have experience as adjudicators or advocates in contested adjudicative hearings. And while Jensen accurately points out that hearing officers are volunteers, he provides no argument as to why paid hearing officers would better ensure due process.

Jensen's fourth due process claim—that the disciplinary procedure violates due process because the Board "retain[s] the power to overrule the hearing officer," *id.* at 7—is nonsensical. Jensen argues, in effect, that his due process rights would be better protected if he had no right of appeal to the Board. This goes against the conventional wisdom in American jurisprudence that rights of appeal increase, rather than decrease, procedural fairness. *See, e.g., In re Disciplinary Proceeding*

27

*Against Osborne*, 187 Wn.2d 188, 205, 386 P.3d 288 (2016) (stating that the ELC rules "ensure adequate [due] process by allowing for an appeals process"). It is also at odds with his own purported strategy in this case, which was to skip the hearing on the grounds that it was a "worse than useless . . . travesty," Opening Br. of Appellant at 28, and save his arguments for the Board and this court. This claim, like Jensen's other due process claims, is meritless.

## III. CONCLUSION

Jensen did not attend his disciplinary hearing and entered no factual evidence into the record. The hearing officer found that Jensen violated the RPCs and recommended disbarment, and the Board unanimously affirmed. There is substantial evidence in the record for the hearing officer to have reasonably found that Jensen violated the RPCs, and Jensen presents no clear reason to depart from the Board's unanimous recommendation of disbarment. For these reasons, we adopt the recommendation of the hearing officer and the Board and disbar Jensen from the practice of law. As a condition of reinstatement, Jensen must pay all judgments owed by him to Therese Jensen, James Brown, and the Therese Brown Jensen Trust.

_Fairhurst, C.J._

WE CONCUR:

_____

_Madsen, J._

_____

_Stephens, J._

_____

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Yu, J._